1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK

2
     ------------------------------x
3                                        19-CV-7275(DLI)
     WINDWARD BORA LLC,
4                                        United States Courthouse
              Plaintiff,                 Brooklyn, New York
5
              - versus -                 March 23, 2023
6                                        11:00 a.m.
     STUYVESANT CONSTRUCTION
7    CORP. et al.,

8             Defendant.

9    ------------------------------x

10         TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE DORA L. IRIZARRY
11            UNITED STATES SENIOR DISTRICT JUDGE

12
     APPEARANCES
13
     Attorney for Plaintiff:   HASBANI & LIGHT, P.C.
14                             450 Seventh Avenue
                               Suite 1408
15                             New York, New York 10123
                               BY:  RAFI HASBANI, ESQ.
16

17   Attorney for Defendant:   RICHLAND & FALKOWSKI, PLLC
                               5 Fairlawn Drive
18                             Suite 204
                               Washingtonville, New York 10992
19                             BY:  DANIEL H. RICHLAND, ESQ.

20

21
     Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
22                             Phone:  718-613-2330
                               Fax:    718-804-2712
23                             Email:  LindaDan226@gmail.com

24

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

1          (In open court.)

2          THE COURTROOM DEPUTY:  Civil cause for status

3   conference, Docket Number 19-CV-7275, Windward Bora versus

4   Stuyvesant Construction.

5          Please state your appearances.

6          MR. HASBANI:  Good morning, Your Honor.  Rafi

7   Hasbani, Hasbank & Light, attorneys for the plaintiff.

8          THE COURT:  Good morning.

9          MR. RICHLAND:  Good morning, Your Honor.  Daniel H.

10  Richland, Richland & Falkowski, PLLC for defendants,

11  Stuyvesant Construction Corp.

12         THE COURT:  Good morning.

13         I'm just going to ask you please to remain seated

14  during this conference, but keep your voices up nice and loud

15  so that we can hear each other.

16         I'm also going to ask you please to speak a little

17  slowly so that the court reporter can take down the

18  proceedings as accurately as possible.

19         So as I noted in the scheduling order, the reason

20  why I wanted the parties here was to address the deficiencies

21  in connection with the parties' cross summary judgment motions

22  and defendants' motion to strike.

23         Let me start out by saying that I've seen some

24  pretty lousy briefing in my day, but the papers here really

25  take the cake.  On both sides.  On both sides.  I've never

1    seen such sloppy lawyering in all my life.  And that's why

2    you're here.

3              Because I need to impress upon both of you that I'm

4    not going to tolerate this kind of lawyering any further.  And

5    the next step is going to be a referral to the grievance

6    committee.  You're on notice about that.  And at the minimum,

7    sanctions under 28 U.S.C., Section 1927.  You're on notice.

8              Because I know both of you frequently litigate in

9    this courthouse.  And for some reason lawyers think that

10   judges don't talk to each other.  We do.  And we compare notes

11   on cases.

12             So I am striking the cross summary judgment motions.

13   Defendants' summary judgment motion is filed as Docket Entry

14   Number 79.  And plaintiff's cross summary judgment motion is

15   filed as Docket Entry Number 80.  And defendants' motion to

16   strike or sanctions motion is Docket Entry Number 83.

17             And I will explain to you why it is that I am doing

18   that.  And the transcript of these proceedings will constitute

19   the decision and order of the Court.  There will be no

20   separate written memorandum and order that will be issued in

21   this case.

22             And before we actually get there, I did have a

23   couple of questions.

24             For plaintiff, defendant HSBC Bank has never

25   appeared in this case that was filed back in 2019.  A notation

1   of default was entered April 25th of last year, 2022, but no

2   default judgment motion was made -- has been made by

3   plaintiff.

4           So what is plaintiff's intention with respect to

5   HSBC Bank?

6           MR. HASBANI:  Our intention is that should this

7   Court allow us to go to sale, their interest would be cut off

8   by foreclosure action, considering the Court has obviously a

9   certificate of default against them.

10          THE COURT:  The mere filing of a notation of default

11  doesn't constitute a default judgment.  You have to

12  proactively do something in order for a default judgment to be

13  entered, or to extinguish the case as against HSBC.  It's not

14  automatic.

15          What do you mean that their interest is extinguished

16  after the foreclosure sale?

17          MR. HASBANI:  Given that they have failed to appear

18  in the action, it is my understanding that the default -- a

19  certificate of default is entered against them once a party

20  goes to sale all subordinate liens are extinguished.

21          THE COURT:  As I said, the notation of default

22  doesn't constitute a judgment as against HSBC.

23          MR. HASBANI:  In that case we'll have to do it

24  separately seeking default judgment against HSBC.

25          THE COURT:  You think?

1          And with respect to the issue of diversity of

2     citizenship and this Court's potential lack of subject matter

3     jurisdiction, it is beyond my understanding why defense

4     counsel waited until the filing of the summary judgment motion

5     to raise the issue, given that there are other cases in the

6     court where this was addressed as an issue.

7          And, in fact, identical counsel addressed this issue

8     in a separate case, nearly identical to this one, before Judge

9     Eric Komitee and there was separate litigation about that.

10          MR. RICHLAND:  May I respond, Your Honor?

11          THE COURT:  Yes.

12          MR. RICHLAND:  As I recall, the oral argument for

13     that case, and after the full submission of this motion, and

14     at this time I'm happy to withdraw the subject matter

15     jurisdiction, because of the fact Mr. Devico was a Moroccan

16     citizen, and I understand that issue was determined by the

17     Second Circuit.

18          THE COURT:  Back in 2020, while this litigation was

19     pending.

20          MR. RICHLAND:  Correct.

21          THE COURT:  My point is that subject matter

22     jurisdiction is a threshold issue.  And if that was an issue,

23     then it should have been addressed prior to the filing of

24     summary judgment motion.

25          MR. RICHLAND:  Right.

1          THE COURT:  Not to wait until the summary judgment

2    motion is filed to address it.

3          MR. RICHLAND:  If I may, Your Honor.

4          I did not think I had enough material to address

5    that issue at the time we made the motion for summary

6    judgment, which is why I didn't move for summary judgment on

7    it.

8          The only place --

9          THE COURT:  No, excuse me.  That's not the point.

10         You don't need to move for summary judgment on the

11   issue of subject matter jurisdiction.  It's a motion to

12   dismiss with respect to subject matter jurisdiction, which is

13   a threshold issue.

14         MR. RICHLAND:  I agree with that, Your Honor.  Yes.

15         And I probably --

16         THE COURT:  You had all your information at the

17   beginning of the case.

18         MR. RICHLAND:  When --

19         THE COURT:  Do your investigation at the beginning

20   of the case.

21         And it's not like you're not known to each other.

22         MR. RICHLAND:  Yes, Your Honor.

23         THE COURT:  I've had other cases in connection with

24   Windward Bora where this was raised as an issue.

25         MR. RICHLAND:  Right, at this time --

1          THE COURT:  And with the internet, it is very easy

2    to find that out.

3          MR. RICHLAND:  There was an outstanding factual

4    issue as to whether there were other members up until

5    essentially Judge Komitee's decision.

6          THE COURT:  But you did not raise it as an issue.

7          MR. RICHLAND:  I raised it in opposition as an

8    affirmative defense, which should be maintained, and I did not

9    think I had enough material at that time or through the

10   discovery process.

11         THE COURT:  But you didn't ask for jurisdictional

12   discovery.

13         MR. RICHLAND:  I did ask for jurisdictional

14   discovery in my discovery demands, yes.

15         THE COURT:  Again, that begs the question.

16         MR. RICHLAND:  Yes, Your Honor.

17         Having received very little to no material on that,

18   I'm not clear what I could have done, other than wait for this

19   issue to be resolved, either at trial or at summary judgment.

20         THE COURT:  You know what, that's just sheer and

21   utter ridiculous nonsense.

22         MR. RICHLAND:  My apologies.

23         THE COURT:  Who the hell do you think you're talking

24   to here?  Because somehow or another you managed to get the

25   information before Judge Komitee.

1        MR. RICHLAND:  The information in question, as it

2   turned out, was a change in law.

3        THE COURT:  And the change in law occurred in 2020.

4   Two years ago.  Three years ago.

5        MR. RICHLAND:  Yes.

6        THE COURT:  Three years ago now.

7        MR. RICHLAND:  Correct.  Yes.

8        THE COURT:  And I know for a factor that I've had

9   other cases with Windward Bora where there was an issue of the

10  question of diversity and similar markets foreclosure cases,

11  where the court sua sponte raised the issue.

12       MR. RICHLAND:  Yes.

13       THE COURT:  But it behooves you, as a defendant, if

14  you have an issue about it to raise it and not to wait until

15  summary judgment.

16       And at no time did you withdraw your motion for lack

17  of subject matter jurisdiction, in any event, even after

18  Judge Komitee issued his decision.

19       MR. RICHLAND:  That is correct, Your Honor.  I

20  apologize.  I should have sent a letter to the Court.

21       THE COURT:  Your apologies are empty.  They are

22  empty.  Because that decision was rendered in September, if I

23  recall correctly.

24       MR. RICHLAND:  That is correct.

25       THE COURT:  So there's no question that there is

1   subject matter jurisdiction -- that the Court has subject

2   matter jurisdiction in this case, based on complete diversity

3   of citizenship, and obviously the mortgage note is worth more

4   than the 75,000-dollar jurisdictional amount.

5           As to the deficiencies in the summary judgment

6   motions, both sides equally are lacking in the work that

7   they've produced.

8           With respect to plaintiff, the ECF filings and

9   courtesy copies, let me just address those first.

10          As an initial matter, plaintiff uses letters to

11  identify exhibits instead of numbers.  The general practice is

12  that plaintiffs use numbers for their exhibits, not letters.

13  It gets confusing.  Plaintiff use numbers, defendants use

14  letters.

15          It's been 43 years since I graduated law school, 44,

16  and it's always been done that way.  It was done that way

17  before I graduated law school, and it continues to be done

18  that way.  And I'm talking about the plaintiff's memorandum.

19          Plaintiff also labels exhibits differently in the

20  courtesy copies, as opposed to those on ECF, and I don't know

21  how that happens?  Because the courtesy copies are supposed to

22  be an exact duplicate of what is filed.  So I don't understand

23  how that happens.

24          For example, Docket Entry 880-3 is labeled

25  "exhibit".  In plaintiff's courtesy copy it's labeled

1    "Exhibit A".

2              Docket Entry 80-4, it's labeled "verdict sheet".

3    It's affixed to plaintiff's courtesy copy as "Exhibit B".

4              Docket Entry 80-5 is labeled "Exhibit A", and

5    affixed to plaintiff's courtesy copy as "Exhibit D" -- as

6    "Exhibit C", excuse me.

7              And it just goes on.  It goes on.  And, frankly,

8    plaintiff's cross motion can being stricken on this basis

9    alone.  But there are more deficiencies.

10             With respect to Plaintiff's 56.1 statement and the

11   counterstatement, we start first with the purpose of local

12   Rule 56.1.

13             Quote:  The purpose of local Rule 56.1 is to

14   streamline the consideration of summary judgment motions by

15   freeing district courts from the need to hunt through

16   voluminous records without guidance from the parties, end of

17   quote.  *Holtz*, H-O-L-T-Z *versus Rockefeller and Co., Inc.*, 258

18   F.3d 62 at 74, Second Circuit, 2001.

19             There are multiple issues with respect to

20   Plaintiff's Rule 56.1 statement and counterstatement that

21   completely violates this principle and highlight the

22   carelessness with which this motion was done.

23             With respect to pages 1 to 6, those pages contain

24   plaintiff's responses to defendants' Rule 56.1 statement.

25             Local Rule 56.1(d) requires that each statement made

1    by the opponent to a summary judgment motion under

2    Rule 56.1(b) cite admissible evidence.

3           Here, in denying defendants' factual statements,

4    plaintiff consistently failed to cite any evidence.

5           You can look at Plaintiff's 56.1 statement at

6    paragraphs 8 through 11, 15, 18 to 20, 25, 33 to 34, 37 and

7    45.

8           As to pages 6 to page 7, these pages contain

9    plaintiff's statement of undisputed facts in support of its

10   cross motion for summary judgment.

11          Local Rule 56.1(a) requires that a party moving for

12   summary judgment provide a statement of the material facts

13   which the moving party contends are undisputed.

14          Again, local Rule 56.1(d) requires that each

15   statement cite admissible evidence.

16          In identifying facts that plaintiff contends are

17   undisputed, multiple paragraphs fail to comply with

18   Rule 56.1(d) in failing to cite to admissible evidence.

19          Several paragraphs cite the complaint.  Complaint is

20   not admissible evidence.

21          In attempting to cite exhibits, plaintiff fails to

22   identify them at all.  For example, see paragraphs 4 to 5.

23          In addition, plaintiff includes information about

24   the procedural history of this case, which has absolutely no

25   bearing on the material facts.

1          And then as further examples of just carelessness,

2     failure to proofread, I mean I just don't understand it at

3     all.

4          The memorandum of law submitted by plaintiff

5     identifies or refers to an affidavit in support of the motion

6     as being from Devico Korb, K-O-R-B, for example, at page 12.

7     But it's -- the affidavit is not from Devico Korb but from

8     Yonel, Y-O-N-E-L, Devico.  And this affidavit is referred to

9     throughout the memorandum of law, and it's not included as an

10    exhibit.

11          The exhibit -- the affidavit ultimately was provided

12    in the reply as Exhibit J.  And then only after defense

13    counsel highlighted plaintiff's failure to include the exhibit

14    in the memorandum of law.  And we'll talk some more about that

15    affidavit in a minute.

16          And there's defendants' Rule 56.1 statement that

17    also is deficient.

18          Like plaintiff, defendant violated Rule 56.1(d) by

19    failing to cite admissible evidence throughout the 56.1

20    statement.  See Docket Entry Number 79-1 at paragraph 7, 16 to

21    17, 20 to 21, 30 to 37, 43 to 45, 47, 50 to 51.

22          Defendant also makes factual assertions that are

23    irrelevant to the summary judgment.  They're irrelevant to the

24    matters that the Court has to decide in making -- to consider

25    in deciding the motion.

1          For example, a portion of the 56.1 statement is used

2   by defendant to discuss purportedly false affidavits that

3   Yonel Devico filed in other actions.  See paragraphs 38 to 56.

4          Defendant also highlights an instance where

5   plaintiff's counsel filed one of those affidavits in another

6   matter.  See paragraph 46.

7          It also includes an instance where Yonel Devico

8   filed a purportedly false affidavit in a Florida state court

9   regarding the subject property before this Court.  See

10  paragraphing 38 to 42.  Those are wholly irrelevant to the

11  Court's consideration there.

12         And while defendants' memorandum of law uses letters

13  to identify exhibits, as defendants should, he uses letters to

14  identify exhibits, but defendants response to plaintiff's

15  cross motion and opposition identifies new exhibits with

16  numbers.

17         I don't know if that was a reaction to plaintiff

18  using letters, but either way, both parties need to get on the

19  right page here.

20         As with the Rule 56.1 statement, defendant uses a

21  portion of the filings to implicate -- to cast dispersions, I

22  should say, Yonel Devico's credibility -- on Yonel Devico's

23  credibility by highlighting purportedly false affidavits that

24  he filed in other cases.

25         As a general rule, district courts cannot weigh

1    credibility at the summary judgment stage.  See *Tota*, T-O-T-A,

2    *versus Bentley*, 379 Fed.Appx. 31 at 34, Second Circuit, 2010.

3          It is only, quote, in the rare circumstance where a

4    witness' testimony is so problematic that no reasonable juror

5    could credit it, end of quote.

6          *Frost versus New York City Police Department,* 980

7    F.3d 231 at 246, Second Circuit, 2020, citing *Jefferys versus*

8    *City of New York*, 426 F.3d 549 at 554, Second Circuit 2005.

9          In that case, the court explained that this occurred

10   where the plaintiff relied almost exclusively on his own

11   testimony regarding excessive force, much of which was

12   contradictory and incomplete.

13         This situation is not that.  This situation is

14   completely in opposite, given that foreclosure cases require

15   certain documents, primarily a mortgage and an unpaid note and

16   whatever record of payments there were, that can corroborate

17   Yonel Devico's affidavit and deposition testimony.

18         There are issues addressed in the defendants' 56.1

19   statement in connection with when plaintiff was established as

20   an LLC in Delaware.  And other affidavits that were submitted

21   that might have contradictory information.

22         The parties basically agree that plaintiff was

23   established as an LLC in Delaware on August 8th of 2017.  Seem

24   to agree on that.

25         But defendant goes in to other things, such as that

1   Yonel Devico's submitted affidavits stating that plaintiff

2   owned the notes and mortgages before it was established, or

3   different dates for when plaintiff received the mortgage note

4   for the same property.

5            Again, these go to issues of credibility that the

6   Court cannot consider in evaluating a motion for summary

7   judgment.

8            What's most disturbing here is this hyperbolic,

9   self-righteous tone and language, Mr. Richland, that you use

10  throughout your filings.

11           You may not like each other.  I don't really care.

12  I couldn't care less.  You don't have to love each other.  You

13  don't have to like each other, but you need to be

14  professionals and respect each other, act courteously and

15  respectfully.  And if you can't do that, then you don't belong

16  in this profession.  This is a profession.

17           You go to school extra time and at extra great

18  expense after college to get the necessary skills.  Pass an

19  accrediting exam.  Go through a fitness and character

20  committee so that they can determine your fitness to practice.

21  There are codes of professional conduct that you took an oath

22  to uphold.  And that's not what I am seeing here.

23           You can desist from using the hyperbolic language

24  because it doesn't add meat or substance here.  Oh what a

25  tangled web we weave when we first practice to deceive.

1    Really.  You want to be a novelist, then be a novelist.  You

2    want to go out there and write cheap novels, go ahead and do

3    that.  But don't waste my time by putting hyperbolic,

4    emotional garbage into your filings.

5           You know the RICO strategy is so brazen is too

6    brazen out his lack of evidence and proofs invariably by false

7    statements and then bolder and it grander false statements to

8    extricate himself from the prior false statements, a towering

9    pyramid scheme of lies.  Really.  Really.

10          The false tongue serpent.  Yonel Devico has come to

11   this court to speak falsely and bear false witness.

12   Plaintiff's counsel knowing of this falsity sees no evil and

13   hears no evil by design collaborating and covering for a

14   perjurer.  In essence, you are saying that plaintiff's counsel

15   is supporting perjury.

16          Sir, if you have an allegation like that to make,

17   you better damn well have proof of it.

18          MR. RICHLAND:  Thank you, Your Honor.

19          THE COURT:  No, no thank you.  Thank you?

20          Because, you know, if that's what you really think,

21   then you have an obligation to go to the professional

22   responsibility committee of whenever plaintiff's counsel is

23   admitted and bring those charges.

24          Because that's a violation of professional code of

25   responsibility, not to mention a violation of the law.

1          So you, sir, are also in violation of the

2   professional code of responsibility by making such an

3   allegation, particularly if you have no cause to underlie it.

4          And if, in fact, a false affidavit was filed in a

5   Florida state court, well it is the province and the authority

6   of the Florida state court to address that.  Not me.  I have

7   no authority over that action.

8          And issues of credibility have no bearing whatsoever

9   on a summary judgment motion.

10         MR. RICHLAND:  I understand.

11         THE COURT:  I hope you do.

12         MR. RICHLAND:  I do.

13         THE COURT:  Because if I see something like that

14  again, I will take you to the ethics committee of your

15  jurisdiction of admission.

16         MR. RICHLAND:  I understand, Your Honor.

17         THE COURT:  And I will show them all of this.  This

18  isn't a game.  Because there's a big difference between

19  carelessness and sloppy lawyering and supporting perjury.

20         And if indeed you thought that that was what was

21  going on here, then there is a mechanism within the Federal

22  Rules of Civil Procedure, which by the way I don't think

23  either of you have read and familiarized yourselves with.

24         Under Rule 11.  That allows for motions for

25  sanctions.  And there's a vehicle where the Court can have a

1    hearing.

2          However, before you can invoke sanctions under

3    Rule 11, what does it say?  It says that you must give your

4    adversary or the person you are accusing or want to bring

5    sanctions against an opportunity to cure.  Give notice.  And

6    give them an opportunity to cure.

7          You didn't do that here.  And I think that that's

8    significant.  Because if the party cures the defect, then no

9    sanctions flow.  That's the whole point.  And even a court

10   cannot hold somebody in contempt without giving them notice

11   first that what conduct is being complained of is subject to

12   contempt.

13          And that's part of the reason why you both are here

14   today, because I am putting you on serious notice on the

15   record that if I continue to see conduct like this, there will

16   be sanctions.  This is not a game.

17          And, Mr. Hasbani, I'm sure you worked very hard to

18   get where you are.  We all did to become lawyers.  It behooves

19   you to sit down with yourself and make sure that the work you

20   do reflects that so that you don't leave yourself open to

21   garbage accusations like this.  I know I wouldn't like it if I

22   read something like that about me.  It cannot be a pleasant

23   experience.

24          Which leads us to the whole basis of the separate

25   motion to strike that was filed by defense counsel, again,

1    which goes it into not only the allegations that were raised

2    in the summary judgment motion about the issues with respect

3    to Yonel Devico's credibility and supposedly false filings and

4    so on, or false affidavits, and then the motion to strike the

5    affidavit of Devico.

6          Defendant alleges that plaintiff's counsel violated

7    NYSBA's rules of professional conduct, because plaintiff's

8    counsel failed to notify other courts about whatever

9    deficiencies or problems there were in Yonel Devico's

10   affidavits citing to Rule 3.3 of the New York Rules of

11   Professional Conduct.

12          Again, this is irrelevant to the summary judgment

13   motion before the Court, the motions that are before the

14   Court.

15          But, again, you know, Mr. Richland, if you believed

16   in good faith that plaintiff's counsel's violated 3.3, then

17   you were required to report this to the appropriate court or

18   the appropriate attorney grievance committee pursuant to

19   Rule 8.3(a) of the New York Rules of Professional Conduct.

20          So you don't have clean hands here, sir.  Because

21   you either violated Rule 8.3(a) by not reporting plaintiff's

22   counsel in the first instance, or Rule 8.4, by making this

23   accusation here simply to denigrate plaintiff's counsel based

24   on an irrelevant issue.

25          I look very closely at the Devico affidavit -- I'll

1    just call it the "affidavit," there's no other affidavit

2    that's at issue here -- and, you know, yes, there is some

3    issues about when it was executed and so on.  None of this to

4    me speaks of perjury or any intentional falsehood.  What this

5    does speak to me is carelessness, lack of attention to detail.

6            And that's a problem for you, Mr. Hasbani.  You

7    don't pay close attention to what you're doing.  It's a

8    problem.  The better practice would have been, when you sent

9    the affidavit for Mr. Devico to sign, to make it very clear to

10   him that he had to return the entire document to you, not just

11   the signature page.

12           It's not so outside the realm of human experience to

13   believe that somebody in his situation would think, okay, I

14   got this from my lawyer, he's got all of it, the signature

15   page is a separate page, all I have to do is sign that and

16   send it back to him.

17           That's entirely believable.  It's entirely

18   plausible.  I've seen that happen.  And for whatever reason

19   you did not include his affidavit in your original -- in your

20   original response paper, so that's -- so now you've got a

21   second mistake.

22           And so now it's compounded because you realize,

23   okay, because defense counsel said, hey, wait a minute, the

24   affidavit wasn't attached and now you put it together.  And I

25   can see where the errors in the dates occurred.

1        But it is very clear that the Devico's affidavit, in

2   terms of the significant information that's included in there,

3   which is the calculation of the interest amounts and what's

4   owing on the note were as of July 1, 2022, because of the

5   incorporation by reference to the document that contains the

6   calculation that was attached as a supplement to the

7   affidavit.

8        So, yes, what I see here is carelessness.  I do not

9   see perjury.  I do not see subordination of perjury.  What I

10  see is an exaggeration and an attempt to smear plaintiff's

11  counsel over whatever personal vendetta you have,

12  Mr. Richland.  You need to clean up your practice.

13       Mr. Hasbani, a word to the wise.  Because you're not

14  doing yourself any benefit here.  You're not benefiting your

15  client.  And you're allowing yourself to be subjected to all

16  this unnecessary grief.  Life is hard enough.  Especially

17  these days.  And you, sir, are opening up yourself to some

18  additional grief of your own by engaging in this conduct.

19       This is not the first time, and I have lawyers come

20  before me who had somehow gotten so entrenched in their

21  client's causes that it's become an emotional issue.  I've had

22  seasoned lawyers, much more seasoned then you all, engage in

23  that kind of behavior.

24       A word to the wise.  You do not do your client's any

25  service whatsoever by doing that.  The lawyer always has to

1  maintain a level of objectivity in representing their client.

2  Doesn't mean that you can't be sympathetic to your client's

3  cause.  Even empathetic.  But once you lose that level of

4  objectivity, you can't see the forest for the trees.

5          And you need to -- you need to look -- Mr. Hasbani,

6  you need to look at your time management or how it is that

7  you're organizing your work that lines up with submission of

8  this kind of work.

9          I mean, clearly the affidavit to Mr. Devico was

10  sent -- you know, it was near the day when it had to be

11  submitted along with -- that you had to serve your papers and

12  all of that.  There may be a time management issue here.  I

13  don't know.

14          But there is no cause for imposing any kind of

15  sanctions here, separate and apart from the fact that the

16  motions are all stricken.

17          So how do we move forward from here?  First of all,

18  they're stricken, the motions are stricken without -- I'm

19  talking now about the summary judgment motion.  Because if you

20  are planning to bring any other sanctions motions,

21  Mr. Richland, you better damn well have your ducks in order

22  and follow proper procedures.

23          MR. RICHLAND:  I have no such intention, Your Honor.

24          THE COURT:  Because if you don't, I promise you that

25  I will go to the grievance committee.  That's a promise, and I

1    keep my promises.

2              MR. RICHLAND:  I believe Your Honor, and I thank you

3    for the opportunity to do this.

4              THE COURT:  I'm going to give you all leave to

5    resubmit your summary judgment motions.  But before you do

6    that, each one of you is going to have to attend two CLE

7    programs, in person, one on federal practice and one on

8    summary judgment practice.

9              I'm going to give you time to find one.  You have

10   until April 20th to find two programs, again in person, and

11   individually you can send me a -- file a letter telling me

12   what courses you have found that you are anticipating to take,

13   and who the provider is for my approval.

14             Yes, sir.

15             MR. HASBANI:  Sorry, Your Honor, you said two CLEs

16   on federal procedure and summary judgment procedure?

17             THE COURT:  Federal practice -- yes.  And, actually,

18   the better if they would be federal civil procedure, federal

19   civil procedure to be more accurate.  You might find something

20   more on point.  And summary judgment practice in particular.

21             I may consider one course if the course covers the

22   summary judgment practice in enough detail.

23             So please make sure that you let me know who the

24   provider is and if they have a curriculum, a description of

25   the course to provide that.

1          Yes, Mr. Hasbani.

2          MR. HASBANI:  Just for clarification, we have to

3     notify the court by April 20th or complete the course?

4          THE COURT:  No, notify me.  I want to approve the

5     program first.  So that's why April 20th.  And there are

6     religious holidays in between so I want to make sure that you

7     have enough time to -- they are almost upon us, so I want to

8     make sure you have enough time to find something appropriate.

9          I don't want something online.  Something that you

10    need to go to in person.  Okay.

11         And then we will take it from there, once I get

12    that, and then we'll have a -- I'll know when the courses are

13    to be taken and completed, and then we can set a summary

14    judgment schedule after that.

15         Okay?

16         MR. RICHLAND:  Yes, Your Honor.  Thank you.

17         THE COURT:  Do you have any questions at all or

18    anything else that you would like to say?  Mr. Hasbani?

19         MR. HASBANI:  I just want to thank the Court for

20    bringing this to my attention.  There's no excuses for the way

21    I submitted my papers.

22         And I appreciate the Court giving me an opportunity

23    to resubmit and show the Court what I'm actually capable of.

24    And I'll be sure to be paying extra attention during these

25    courses to make sure there are no further mistakes.

1          THE COURT:  Mr. Richland, anything else?

2          MR. RICHLAND:  No, thank you, Your Honor.  I

3    appreciate the advice and counsel, and I will get to it.

4    Thank you.

5          THE COURT:  Okay.  From my perspective, we learn

6    until the day we die.  The day you stop, as my father used to

7    stay, may he rest in peace, the day you stop learning is the

8    day you die.

9          So every day is a new day, if you have the chance of

10   redeeming yourself.  And so each of you has that opportunity

11   to redeem yourself and to learn moving forward.

12         That's what I like to see from people.  I like to

13   see that they progress, that they learn from their mistakes.

14   That they don't keep on repeating the same mistakes.  I think

15   all people are capable of that.  The question is whether you

16   want to do that.

17         Do you understand?

18         MR. RICHLAND:  I do, Your Honor.  Thank you.

19         THE COURT:  All right.  Thank you.

20         MR. HASBANI:  Thank you, Your Honor.

21         Have a great day.

22         THE COURT:  You, too.  Thank you.

23         MR. HASBANI:  Should we order a copy of the

24   transcript?

25         THE COURT:  If you want to, you can order a copy of

1   the transcript, since it is a copy of the -- it's basically

2   the order of the Court, so I'm not going to issue a separate

3   memorandum.

4           MR. HASBANI:  Thank you.

5

6           (Whereupon, the matter was concluded.)

7

8                   *    *    *    *    *

9

10

11  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

12

13      s/ Linda D. Danelczyk              April 4, 2023

14      LINDA D. DANELCZYK                 DATE

15

16

17

18

19

20

21

22

23

24

25