UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WINDWARD BORA, LLC,

                           Plaintiff,

              -against-

STUYVESANT CONSTRUCTION CORP., HSBC BANK
USANATIONAL ASSOCIATION

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:19-CV-07275

# POST TRIAL BRIEF

HASBANI & LIGHT P.C.
Rafi Hasbani, Esq.
450 Seventh Ave. Suite 1408
New York, New York 10123
Tel: (212)643-6677
*Counsel for Plaintiff*

Dated: January 10, 2025

## I. PRELIMINARY STATEMENT

This action seeks to foreclose the mortgage encumbering the real property known as 195 East 39th Street, Brooklyn, NY 11203 and identified as Block: 4876 and Lot: 59 on the Kings County Tax Map (the "Property" or the "Premises"). On December 3, 2024, A trial was held before the Honorable Magistrate Judge Taryn A. Merkl (the "Trial"), where the only testimony offered was by Plaintiff FTS Capital, LLC's ("Plaintiff") witness Yonel Devico. No testimony was provided by Defendant Stuyvesant Construction Corp. ("Defendant"). The parties also stipulated to have the deposition of Benjamin Verdooren by submitted in place of his testimony.

Plaintiff respectfully submits this Post Trial Brief in further support of proposed findings of fact and conclusions of law from the Trial. Plaintiff met its burden by making a showing by preponderance of the evidence that it is entitled to judgment against Defendant. The testimony and evidence introduced by Plaintiff during the trial shows the existence of the debt, the mortgage and a default by the borrower. Defendant failed to provide any evidence or testimony to rebut such findings of fact.

## II. STANDARD

A party's burden of proof at a trial differs than that of a burden of proof on summary judgment. At trial, a party's burden of proof is based upon if it can be reasonably found by a preponderance of the evidence, that a plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). This means, a party must show that its claims are "more likely true than not true." *Metropolitan, S.A. v. DGM Commodities Corp.*, No. 13 CV 1521, 2013 WL 5502818, at *2 (E.D.N.Y. Oct. 2, 2013). In a bench trial, as the trier of facts, the judge is entitled to believe some parts and disbelieve other parts of the testimony. *Shiqiu Chen v. H.B. Restaurant*

*Group, Inc.*, 2020 WL 115279, at 8 (S.D.N.Y. 2020). In foreclosure action trial, nonpayment need only be proven by preponderance of the evidence. *Keahon v. Spinelli*, 135 A.D.2d 503 (1st Dept. 1987).

To make a prima facie case for foreclosure the foreclosing party must show the existence of an obligation secured by a mortgage, and a default on that obligation." *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 n.2 (2d Cir. 1997) (internal quotation marks omitted); *see also, E. Sav. Bank, FSB v. Ferro,* Case No. 13-cv-5882, 2015 WL 778345, at *6 (E.D.N.Y. Feb 24, 2015).

### III. TESTIMONY

At Trial, Plaintiff offered the testimony of Yonel Devico ("Devico"), the sole member of Winward Bora, LLC ("WB"), the Plaintiff that commenced this action. Devico testified as to the validity of Plaintiff's **Exhibit 1**, which was a copy of the note. Trial Transcript pg. 16 ¶18-20; pg. 19 ¶ 5-25; pg. 20 ¶ 1-6. Moreover, on Plaintiff provided the original note for inspection by the court and Defendant's counsel on December 10, 2024. See ECF Dkt Entry on 12/10/24. Devico further testified that the note was secured by a mortgage, and the mortgage was submitted as Plaintiff's **Exhibit 2**. Trial Transcript pg. 20 ¶ 7-25; pg. 21 ¶ 1-6. By providing the note and mortgage, and providing proper testimony as to their existence, Plaintiff has met its burden of proof for the first prong of a foreclosure action.

Plaintiff also met its burden by the preponderance of the evidence that the subject loan was in default at the time the action was commenced and remains in default. The parties stipulated to have the deposition of Benjamin Verdooren submitted in place of testimony at the Trial. Trial Transcript pg. 3 ¶ 7-18. The deposition was admitted as Plaintiff's **Exhibit 6**. Trial Transcript pg.

136 ¶ 4-7. Through the testimony of Benjamin Verdooren, Plaintiff shows the uncured default on the loan. Mr. Verdooren testified that the loan was in default and the last payment received on the loan was October 9, 2008, (**Exhibit 6** pg. 44 ¶ 13-16), and at the time of service transfer there remained a balance of $108,801.24. See **Exhibit 6** pg. 45 ¶ 6-7; 46 ¶ 13-21; 47 ¶ 7-1150. In addition to his deposition testimony, Mr. Verdooren executed an affidavit that states the documents provided by PHH are part of PHH's business records, are regularly kept in the course of business, and his testimony is based on the review of such records. Plaintiff's **Exhibit 5**. The date of the note, and name of borrower correspond with the loan history provided by PHH. Plaintiff's **Exhibit 1** and **Exhibit 5**. Verdooren further testified that although the PHH records (**Exhibit 5**) reflect a 0.00 balance, that is because the $0.00 balance reflects the amounts GMAC would have sought to collect after it service transferred the loan, not the amount actually due on the loan. **Exhibit 6** pg. 49 ¶ 4-8. With regard to the claims of the loan being charged off, Verdooren testified that when a loan is "charged off" the debt still exits (**Exhibit 6** pg. 32 ¶ 4-14). Lastly, while the loan was being serviced by GMAC through 2012, the loan was not paid off and a balance of $108,801.00 remained. **Exhibit 6** pg. 48 ¶ 7-11.

Additionally, Devico testified as to **Exhibit 3**, a servicing tape he received from his predecessor reflecting the amounts owed on the loan. Devico testified as to the business practices of the industry, if no activity is done on the loan, no inputs would be input into a lender's records. Trial Transcript pg. 55 ¶ 3-6. Devico has been in the loan purchasing industry for thirteen years (Trial Transcript pg. 55 ¶ 7-9), and testified as to the industry standard of relying on a predecessor's business records to determine the loan status. Trial Transcript pg. 55 ¶ 8-14. Devico also testified that the Servicing Tape (**Exhibit 3**) reflects the same date of default as the PHH records. Trial Transcript pg. 51 ¶ 15-18. Devico testified that the default date was advanced to comply with the

New York Statute of Limitation laws. Trial Transcript pg. 57 ¶ 4-7. With the advancement of the default date and at the time of filing, the loan had an approximate unpaid principal balance of $104,000. Trial Transcript pg. 57 ¶ 16-19. Lastly, Devico testified that WB had physical possession of the original note prior to the commencement of the action. Trial Transcript pg. 12 ¶ 4-19.

## IV. FINDINGS OF LAW

### A. Standing

Defendant challenged Plaintiff's standing to commence the action. Defendant insinuated at trial that since there is a loan sale and purchase agreement between RCS Recovery Services and Crosby Capital Usa, LLC, (Defendant's **Exhibit F**), and a second agreement from Crosby Capital USA, LLC to WB (Defendant's Exhibit , the allonges to the note are improper since the allonge is from RCS Recovery Services to WB. Trial Transcript pg. 71 ¶ 18-25. However, these allegations are merit less.

"Under New York law, 'a plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *CIT Bank v. Nwanganga,* 328 F.Supp.3d 189, 196 (S.D.N.Y. 2018) *quoting OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016); *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980 (2d Dept. 2015); *see also OneWest Bank, N.A. v. Guerrero*, No. 14-CV-3754, 2018 WL 2727891, at *3 (S.D.N.Y. June 6, 2018). "Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *Melina*, 827 F.3d at 222 *quoting U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752 (2d Dept. 2009).

Physical delivery is "established where the plaintiff possesses a note that, on its face or by allonge, contains an endorsement in blank or bears a special endorsement payable to the order of the plaintiff." *Eastern Sav. Bank, FSB v. Thompson*, 631 Fed. Appx 13, 15 (2d Cir. 2015) (quoting *Wells Fargo Bank, NA v. Ostiguy*, 8 N.Y.S.3d 669, 671 (3d Dept. 2015)) (internal quotation marks omitted). "Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff." *U.S. Bank Tr., N.A. for LSF9 Master Participation Tr. v. Toney*, No. 17-CV-5516 (MKB), 2018 WL 3946506, at *3 (E.D.N.Y. July 13, 2018), *report and recommendation adopted*, No. 17CV5516MKBRLM, 2018 WL 3941940 (E.D.N.Y. Aug. 15, 2018).

A plaintiff meets its burden to establish standing by proving that it had "possession of the note prior to commencement of [the] action." *Taylor*, 25 N.Y.3d at 362. Annexing a copy of the endorsed note to the complaint at commencement is sufficient evidence for Plaintiff to establish *prima facie* that it had standing through possession of the note at commencement. *See, CIT Bank, N.A. v. Moroz,* 19-cv-04473, 2019 WL 6352467 (E.D.N.Y. November 27, 2019); *Gustavia Home, LLC v. Owusu,* 16-cv-5709, 2018 WL 2122818 (E.D.N.Y. May 8, 2018); *Nationstar Mortgage v. LaPorte,* 162 A.D.3d 784 (2d Dept. 2018); *Deutsche Bank Nat. Trust Co. v. Umeh,* 145 A.D.3d 497 (1st Dept. 2016).

Moreover, N.Y. U.C.C. Law § 3-204 (2) states that an instrument that is "payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed." If the instrument is delivered to a third party, the U.C.C. permits "[t]he holder [of the Note to] convert a blank indorsement into a special indorsement by writing over the signature of the indorser in blank any contract consistent with the character of the indorsement." N.Y. U.C.C. Law § 3-204 (3).

WB established its *prima facie* standing by attaching a copy of the Note specifically endorsed to WB to the complaint at commencement and by providing the chain of assignments of mortgage ultimately assigning the mortgage to WB. Moreover, WB presented the original note to the court and Defendant's counsel on December 10, 2024, showing the wet ink signature of the borrower, and the allonges affixed to the note.

Defendant's allegations that the allonges do not line up since it is from RCS Recovery Services to WB, while there's a purchase agreement to Crosby Capital USA, LLC, are meritless. The NY UCC allows for the note holder to convert an endorsement in blank into a specific endorsement. WB had every right to convert the endorsement in blank from RCS Recovery Services into an endorsement specifically into WB. Therefore, WB has shown it had standing to commence the action.

Moreover, there is testimony that WB had physical possession of the note prior to the commencement of the action. Admittedly, the testimony given at trial by Mr. Devico regarding the date of possession (2017-2018) differs from the responses provided in Plaintiff's responses to Defendant's interrogatories (September 2019), the dates all pre-date the commencement of the action. The law only requires that a plaintiff be the owner and holder of the note prior to commencement of the action. Therefore, WB has proven that it had standing to commence the action.

**B. Charge Off, Waiver and Satisfaction**

At Trial Defendant attempted to insinuate that nothing is owed on the loan, because the PHH's records (Plaintiff's **Exhibit 5**) reflect a 0.00 due. Moreover, since the PHH's records state the loan was "charged off" Defendant has attempted to convince the court that this means the debt

is no longer owed on the loan, or that the loan has been satisfied. However, the debt remains outstanding on the loan, and Plaintiff has the right to enforce it.

A debt that has been "written" or "charged off" may be transferred to another party. *See LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1188 n. 5 (11th Cir. 2010). The act of charging off a debt refers to a mechanism whereby creditors determine that a debt is unlikely to be repaid by the borrower and, therefore, cannot be collected. *See Caplinger v. Ocwen Loan Servicing, LLC,* No. 8:14-cv-3214-T-35MAP, 2015 WL 12938920, at *1 (M.D. Fla. Dec. 29, 2015); *see also In re Zelka,* 407 B.R. 684 (Bankr. W.D. Penn. 2009). As a result, the loan is written off and deemed a loss of principal and interest. *See id.* However, the charged off debt is not forgiven. *See id.* The charged off debt may then be sold to another party for further efforts toward satisfaction. *See id.*

Here, Stuyvesant raised the issue of "charge off." Stuyvesant incorrectly represents to the court, that because the PHH records reflect a charge off of the loan, and the documents state a 0.00 balance, there is nothing owed on the loan, or that Plaintiff has waived its right to collect. This representation is inaccurate because the alleged "charge off" by PHH would have absolutely no bearing on a subsequent sale of the under lying loan. Additionally, the alleged "charge off" would not bar the Plaintiff from seeking to foreclose the encumbered property in an effort to satisfy the loan. Moreover, Mr. Verdooren testified that although the PHH records (**Exhibit 5**) reflect a 0.00 balance, that is because the $0.00 balance reflects the amounts GMAC would have sought to collect after it service transferred the loan, not the amount actually due on the loan. **Exhibit 6** pg. 49 ¶ 4-8. With regard to the claims of the loan being charged off, Verdooren testified that when a loan is "charged off" the debt still exits (**Exhibit 6** pg. 32 ¶ 4-14). Lastly, while the loan was being serviced by GMAC through 2012, the loan was not paid off and a balance of $108,801.00 remained. **Exhibit 6** pg. 48 ¶ 7-11.

Defendant has not provided any evidence that the loan has been satisfied other than the insinuation of the 0.00 balance in the PHH records. Defendant has not provided proof of payment of the debt, nor any documentation stating that the debt is no longer valid on the loan.

C. **Default Notice and RPAPL 1304 Notice**

It is undisputed that Defendant is not the borrower on the loan. As a non-borrower, Defendant lacks standing to challenge Plaintiff's compliance with the default notice per the mortgage and RPAPL 1304. *Wilmington Sav. Fund Society, FSB v. DeCanio,* 2017 WL 1713111 (Suffolk Sup. Ct. May 3, 2017) (holding because defendant corporation was not a borrower, it lacks standing to challenge any claimed defects in the RPAPL § 1304 notice or plaintiff's compliance with any contractual notice provisions set forth in the mortgage). Moreover, since the property is no longer borrower occupied, RPAPL 1304 does not apply. *Id.*

## V. FINDINGS OF FACT

As stated above, Plaintiff's burden of proof is by preponderance of the evidence. Since this was a bench trial, the judge is the trier of fact and has discretion to believe some parts and disbelieve other parts of the testimony. Mr. Devico provided credible testimony and the evidence shows that it is more likely than not that the subject loan is in default. Moreover, the facts show that WB had standing to commence the action.

To start, it is undisputed that Karisma Page took out a loan for $110,000.00 by a note dated the same day. (Plaintiff's **Exhibit 1**). It is also undisputed that Plaintiff's mortgage secured said loan and it was recorded on September 13, 2006 as CRFN: 2006000517103 against the Property. (Plaintiff's **Exhibit 2**). Defendant purchased the property by a deed dated September 11, 2017,

and recorded on October 12, 2017 as CRFN: 2017000376918. (Plaintiff's **Exhibit 4**). The deed reflects the purchase price paid by Defendant for the Subject Premises, a two-family dwelling in Brooklyn was $20,000.00. (Plaintiff's **Exhibit 4**). The documents were signed by Defendant's admitted owner, Viktoriya Zavelina.

As seen from the aforementioned recorded documents, Plaintiff's mortgage was clearly of record prior to Defendant's purchase of the property. For the two years that Defendant owned the Subject Premises, and prior to the commencement of this foreclosure action, Defendant failed to provide any evidence that it attempted to discharge the "charged off" and/or satisfied mortgage from the Subject Premises records. Moreover, Defendant failed to provide any satisfaction of mortgage or release of lien pertaining to Plaintiff's mortgage during its ownership of the Subject Premises. Additionally, Defendant failed to counterclaim for a discharge of mortgage in this action.

Mr. Verdooren provided testimony that during GMAC's servicing of the loan, the loan was in default since 2008. The records reflect that the loan remained in default through GMAC's servicing which ended in 2012. The records reflect a last paid date of October 2008. (Plaintiff's **Exhibit 5**).

Mr. Devico, an individual who has been in the note purchasing business for nearly thirteen years, testified as to the industry standards and practice when loans are being sold on the secondary market. Generally, a lender may not make inputs into its history if no activity on the loan occurs. Mr. Devico also testified that the date of the last payment in the PHH records and on the servicing tape provided by WB's predecessor, are identical, and that WB has not received any payments on the loan. Defendant attempted to impeach Mr. Devico as a witness with the submission of an

affidavit from a different matter, but that affidavit was not admitted into evidence. Mr. Devico is a credible witness, and his testimony should be believed by the court.

The evidence and the testimony are overwhelming in showing that it is more likely than not the subject loan is in default. Furthermore, no evidence was presented by Defendant showing otherwise. Not a shred of documentation showing any payments were made, testimony by an individual with knowledge of payments being made, nor any documents or testimony that the loan has been satisfied. Defendant's failure to present any evidence or testimony to rebut that of Plaintiff's, the court can draw an inference that Plaintiff's testimony and evidence are sufficient to show that it is more likely than not that the subject loan is in default. Lastly, Mr. Devico testified that based on the use of a mortgage amortization schedule and the advancing of the default date to comply with the NY statute of limitation laws, the loan is due for an unpaid principal balance of approximately $104,000, plus interest and fees and costs.

## VI. <u>CONCLUSION</u>

Plaintiff met its burden of proof of showing that it is more likely than not the loan is in default. Defendant has not and cannot dispute the validity and existence of the note and mortgage, leaving the default as the only prong left for Plaintiff to prove in order to make a case for foreclosure. The evidence is overwhelming on showing a default on the loan since 2008, and that the default remains from January 1, 2014 through today. Defendants have not provided any evidence, nor testimony to show otherwise. Moreover, the law is clear on WB's standing to commence the action, the status of the loan even after "charge off" and Defendant's ability to challenge the default notice and the RPAPL 1304 notice. Plaintiff has provided credible testimony and evidence to establish that judgment should be granted in its favor.

It is respectfully requested that the court issue an order deeming the subject loan in default, granting a Judgment of Foreclosure and Sale that appoints a referee to sell the property; directing the distribution of the sale proceeds in accordance with RPAPL § 1354; Such additional relief as law and equity allow.

Dated: New York, New York
       January 10, 2025

<u>*Rafi Hasbani*</u><br>Rafi Hasbani, Esq.