**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------X

**FTS CAPITAL, LLC,**

                              **Plaintiff,**

   -against-

**STUYVESANT CONSTRUCTION CORP., HSBC BANK USA NATIONAL ASSOCIATION,**

                            **Defendant.**
-------------------------------------------------------------------------------X

Docket No.:
**19-CV-07275(TAM)**

**SERVED: JANUARY 10, 2025**

<u>**POST-TRIAL MEMORANDUM**</u>

Richland & Falkowski, PLLC
Daniel H. Richland, Esq.
5 Fairlawn Drive, Suite 204
Washingtonville, New York 10992
*Counsel for Defendant*

## PRELIMINARY STATEMENT

Defendant Stuyvesant Construction Corp. ("Defendant") submits this post-trial memorandum after the evidentiary conclusion of a bench trial conducted on December 3, 2024 and a note inspection on December 10, 2024[1].

In September 2017, Defendant acquired 195 East 39th Street, Brooklyn, New York ("Premises"). The Premises, at that time, was encumbered by two mortgages of record and was being foreclosed by the first mortgagee. Defendant resolved the first mortgage and rehabilitated the Premises at an aggregate cost of half a million dollars. The Premises had been vacant for a decade and required substantial rehabilitation. The Pages had represented to Defendant that the second mortgage was charged off and had a balance of zero dollars and, thus, Defendant believed that nothing was due on the second mortgage.

Windward Bora, LLC ("Windward") acquired this loan on or about September 20, 2019 with minimal to no supporting paperwork as to the unpaid principal balance or default, and without representations or warranties as to the unpaid principal balance or default.

However, in this action, Windward alleged that the loan was in default on January 1, 2014 and there were sums due on Note, which remained unpaid. Plaintiff was unable, at trial, to produce a witness who could support these allegations. Yonel Devico, the principal of Crosby Capital LLC ("Crosby") and Windward, had personal knowledge as to this loan only after its acquisition on September 20, 2019. He was not competent to testify to any default, upon personal knowledge, prior to that date. Nor did Plaintiff interpose any business record supporting either a January 1, 2014 default or that there were unpaid sums due on the Note. Hence, the Plaintiff failed to prove its case in chief at trial, thus warranting Judgment in favor of Defendant.

---

[1] After inspecting the Note before this Court on December 10, 2024, Defendant's principal was satisfied and has directed me to no longer pursue the lack of standing defense stated in the Answer.

Plaintiff also failed to establish compliance with NY RPAPL §§ 1303 and 1304 which further warrant Judgment in favor of Defendant.

## FACTS ADDUCED AT TRIAL

After trial on December 3, 2024, the following facts were established by the testimony and evidence adduced. Exhibits adduced at trial are referred to by their number or letter designation, as appropriate. ECF Dkt. No. 122.

On or about July 25, 2006, non-party Karisma Page gave a Note to Columbia Home Loans, LLC dba Brokers Funding Services, Co. in the principal amount of $110,000.00 ("Note"). **Exhibit 1**. To secure the aforesaid Note, on the same date, non-parties Randy Page and Karisma Page gave a Mortgage to Mortgage Electronic Registration Systems, Inc., acting solely as nominees for Columbia Home Loans LLC dba Brokers Funding Services, Co. securing the indebtedness under the Note against 195 East 39th Street, Brooklyn, New York ("Premises") ("Mortgage"). **Exhibit 2**. On September 11, 2017, Page Capital Property Management, Inc. conveyed title to the Premises to Defendant. **Exhibit 4.** As Defendant is not a borrower under the Note and Mortgage, Defendant lacks knowledge of this matter prior to September 11, 2017.

In the Complaint, Plaintiff alleged that "Randy Page and Karisma Page have failed to comply with the terms and provisions of the said Mortgage and said instruments secured by the Mortgage, by failing to make the Monthly Payments due on January 1, 2014 and the default continues to date." ECF Dkt. No. 1 ¶ 13. Plaintiff further claimed that, "The unpaid principal amount due under the Note, and all accrued and unpaid interest and late charges which sum as of September 30, 2019 amounts to $176,012.60." *Id.* at ¶ 17(a). Plaintiff also claimed compliance with NY RPAPL § 1304 and NY RPAPL § 1303, conditions precedent to commencement. *Id.* at

¶ 14.  Plaintiff's burden of proof at trial was to prove that there was a default on January 1, 2014, the unpaid principal balance on December 30, 2019, and compliance with NY RPAPL §§ 1303 and 1304.

A core issue at trial was when Windward acquired the Note and Mortgage underlying this action as Yonel Devico, Windward's sole member, would lack personal knowledge of events prior thereto.  FRE §§ 601, 602.  Yonel Devico testified to owning the Note and Mortgage at some unspecified point in 2017.  Trial Transcript ("Trial Tr."), p. 11 LL 25, p. 12 LL 1, LL 13-19. Plaintiff submitted no documentary evidence to substantiate this claim.

In opposition to this claim were the Plaintiff's Amended Responses and Objections to Defendant's First Set of Interrogatories dated October 16, 2020 ("Interrogatory Responses" and **Exhibit B**), which were verified by Yonel Devico.  Plaintiff had previously represented that Windward was only formed on August 8, 2017 and that "[Windward] came into physical possession of the Note and Mortgage on September 20, 2019."  **Exhibit B,** Response Nos. 2, 4. This position was further substantiated by two loan sale agreements, filed by Plaintiff's counsel in a pending New York action, dated September 12, 2019 and September 13, 2019, between RCS Recovery Services, LLC ("RCS") and Crosby, and Crosby and Windward, respectively.  **Exhibit F; Exhibit G**.

When confronted with this inconsistency, Yonel Devico conclusorily testified, "The note – we came into possession of the note before the commencement of this action on or about those days."  Trial Tr. P. 94 LL 11-21.

Yonel Devico also testified that the unpaid principal balance was "that number was $104,000 and like a few hundreds."  Trial Tr. p. 58 LL 3-5.  However, Yonel Devico did not testify as to how, specifically, he calculated that figure.

Relevantly, there is no dispute that Yonel Devico lacked personal knowledge of the default on January 1, 2014 and was not competent to testify as to a default on that date. FRE §§ 601, 602; *Bank of New York Mellon v. Gordon,* 171 A.D.3d 197, 206 (2nd Dept. 2019).

At trial, Plaintiff failed to elicit competent testimony or submit admissible evidence that there was a default on January 1, 2014 or as to the principal balance due on December 30, 2019. Plaintiff's only relevant alleged business record, the Loan Information Record ("LIR" and **Exhibit 3**) was admitted for the limited purpose of its reception, and not admitted for its truth. ECF Dkt. No. 122. The LIR also did not, on its face, state that there was a default on January 1, 2014 or that the unpaid principal balance is "$104,000 and like a few hundreds." Trial Tr. p. 58 LL 3-5. Under New York precedent, the business record itself must "actually evince the facts for which they are relied upon." *U.S. Bank N.A. v. Pickering-Robinson*, 197 A.D.3d 757, 759 (2nd Dept. 2021) (citing *Citigroup v. Kopelowitz*, 147 A.D.3d 1014, 1015 (2nd Dept. 2017)). The LIR does not reflect either a January 1, 2014 default or that the unpaid principal balance is "$104,000 and like a few hundreds." Trial Tr. p. 58 LL 3-5.

Yonel Devico's testimony that he advanced the due date to January 1, 2014 and unilaterally reduced the unpaid principal balance were assumptions not supported by any business record. Trial Tr. p. 95 LL 1-23. Yonel Devico lacked personal knowledge of the period between 2012 and 2019, relative to this loan, and there was a record gap for that same period. Hence, Yonel Devico could not know that there was a default on January 1, 2014 (and admitted he simply assumed there was one), nor could he know whether payments had been made, principal waived, etc. during this same period.

Similarly, the PHH records (**Exhibit 5**) do not evidence a January 1, 2014 default date and thus do not "actually evince the facts for which they are relied upon." *Pickering-Robinson*, 197

A.D.3d at 759; Verdooren Tr. p. 58 LL 6-9.  Hence, the Plaintiff failed to prove the default date or the unpaid principal balance.

Moreover, Plaintiff adduced no admissible evidence or testimony at the trial whatsoever regarding compliance with NY RPAPL § 1303 or NY RPAPL § 1304, Defendant's tenth and seventeenth affirmative defenses contained in the Answer.  ECF Dkt. No. 10 ¶¶ 23, 33.

### A. Plaintiff Failed to Prove the Elements of a Claim of Mortgage Foreclosure by a Preponderance of the Evidence at Trial.

"A facially adequate cause of action to foreclose a mortgage requires allegations regarding the existence of the mortgage, the unpaid note, and the defendant's default thereunder, which, if subsequently proven, will establish a prima facie case for relief."  *U.S. Bank National Association v. Nelson*, 169 A.D.3d 110, 113 (2nd Dept. 2019) (citing *see IndyMac Venture, LLC v. Amus*, 164 A.D.3d 883, 884 (2nd Dept. 2018); *JPMorgan Chase Bank NA v. Wenegieme*, 162 A.D.3d 876, 877 (2nd Dept. 2018); *A/SL DFV, LLC v. C.A.R.S. Constr., LLC*, 161 A.D.3d 921, 922 (2nd Dept. 2018)). At this trial, the "unpaid note" and the "defendant's default thereunder", i.e. the principal balance and January 1, 2014 default, were at issue.

Plaintiff was required to prove these elements by a preponderance of the evidence.  "To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true" based upon the admitted evidence.  *Fischl v. Armitage*, 128 F.3d 50, 55 (2nd Cir. 1997).  Inadmissible evidence is not considered.  And evidence that has been limited in its admission, such as **Exhibit 3**, may only be considered for that limited purpose.  FRE § 105.

At trial, Plaintiff failed to prove the principal balance of the Note on December 30, 2019 or the default on January 1, 2014.

### 1. Plaintiff Failed to Prove a Default on January 1, 2014 at Trial.

Plaintiff's complaint alleged a default on January 1, 2014: "Randy Page and Karisma Page have failed to comply with the terms and provisions of the said Mortgage and said instruments secured by the Mortgage, by failing to make the Monthly Payments due on January 1, 2014 and the default continues to date." ECF Dkt. No. 1 ¶ 13. The Plaintiff did not allege any other date of default or even that there were successive defaults.

It is well settled in New York that, "[W]ith respect to a mortgage payable in installments, there are 'separate causes of action for each installment accrued, and the Statute of Limitations [begins] to run, on the date each installment [becomes] due." *Wells Fargo Bank, N.A. v. Cohen*, 80 A.D.3d 753, 754 (2nd Dept. 2011) (*citing Loicano v. Goldberg*, 240 A.D.2d 476, 477 (2nd Dept. 1997) (quoting *Pagano v. Smith*, 201 A.D.2d 632, 633 (2nd Dept. 1994); *see Lavin v. Elmakiss*, 302 A.D.2d 638, 639 (3rd Dept. 2003); *Zinker v. Makler*, 298 A.D.2d 516 (2nd Dept. 2002)). Hence, each missed monthly payment is a separate cause of action as a matter of law under New York law. Accordingly, one cannot assume a default on one date as a result of a default on a different date, as they are separate causes of action. *Deutsche Bank National Trust Company v. Saavedra*, 228 A.D.3d 828, 830 (2nd Dept. 2024).

In *Saavedra*, which is controlling precedent on this issue, the plaintiff "submitted an affidavit of an employee of its loan servicer, who averred that he reviewed certain business records maintained by the loan servicer and that the default defaulted in making a payment on the mortgage debt on October 1, 2013, and continuing thereafter. However, the affiant failed to submit any business record substantiating the alleged default on October 1, 2013, and instead submitted a loan payment history reflecting transactions occurring on or after October 4, 2013." *Id.* The Second Department then held, "the affiant's assertion regarding the defendant's alleged default on October

1, 2013, without a supporting business record upon which he could rely in making that assertion constitutes inadmissible hearsay." *Id.* (citations omitted).

Yonel Devico, Plaintiff's sole testifying witness, was, by his own admission, not competent to testify to a January 1, 2014 default as his entities did not own the Note and Mortgage on that date. Trial Tr. p. 11 LL 25, p. 12 LL 1. Rather, Yonel Devico testified that he assumed that the loan was in default on January 1, 2014 as Windward "had to advance the installment that were older than six years to collect only on payment within six years and advance." Trial Tr. p. 57 LL 5-7.

The problem with this testimony is that (i) Yonel Devico had no personal knowledge that the loan was in default on January 1, 2014 and (ii) neither Windward nor Plaintiff had any documentary evidence that the loan was in default on January 1, 2014 to support Yonel Devico's testimony. The issue, as explained in *Saavedra*, is that testimony about a default date for which one has no supporting business records or personal knowledge renders the testimony inadmissible hearsay under New York law. 228 A.D.3d at 830.

Hence, the fact that Yonel Devico advanced the due date is not *per se* the problem itself. *Wells Fargo Bank, National Association v. Islam*, 193 A.D.3d 1016 (2nd Dept. 2021) (noting the default date was advanced in dicta); Trial Tr. p. 105 LL 8-25, p. 106 LL 1-25, p. 107 LL 1-12. Rather, it is the fact that Yonel Devico's testimony about any January 1, 2014 default is inadmissible hearsay because Yonel Devico had no personal knowledge or evidentiary support for the advancing the date of default to January 1, 2014.

One could reduce this issue to the following inquiry: "how did Yonel Devico know that there was a default on January 1, 2014?" His answer is that he assumed it, not that he knew it or that he had any business records to support it. Trial Tr. p. 95 LL 20-23. Yonel Devico's lay assumptions are not evidentiary.

No evidence was admitted at this trial of a default on January 1, 2014. The LIR, which was not admitted for its truth in any event, did not facially state that there was a default on January 1, 2014 and thus could not "actually evince the facts for which [it is] relied upon," *to wit*, a default on January 1, 2014. **Exhibit 3;** Trial Tr. p. 95 LL 5-13; *Pickering-Robinson*, 197 A.D.3d at 759; FRE § 803(6); FRE § 105.

Nor did the deposition testimony of Benjamin Verdooren or Ocwen established a January 1, 2014 default. **Exhibit 5**; Verdooren Tr. p. 58 LL 6-9. Verdooren lacks personal knowledge of this loan and he admitted that Ocwen's records end with the service transfer in February 2012 and do not evidence the alleged January 1, 2014 default. Verdooren Tr. p. 57 LL 11-21; p. 58 LL 6-9.

As a result, Defendant is entitled to Judgment in its favor on the grounds that Plaintiff failed to prove a default existed on January 1, 2014.

2. **Plaintiff Failed to Establish the Principal Balance on December 30, 2019, the Date this Action Was Commenced.**

Plaintiff also failed to proffer any admissible evidence as to the unpaid principal balance due under the Note and Mortgage on December 30, 2019 and thus, the Court should either award no damages or, under New York law, nominal damages. "The burden is on the plaintiff to establish its entitlement to recovery." *Bravado Intern. Group Merchandising Services, Inc. v. Ninna, Inc.,* 655 Fupp.2d 177, 189 (EDNY 2009). Proof of the unpaid principal balance is the starting point for calculating damages with reasonable certainty, as the Court cannot calculate interest without knowing the unpaid principal balance.

In federal cases, "[I]f a plaintiff fails to demonstrate its damages to a reasonable certainty, then the court should decline to award any damages, even where liability has been established through default." *Louis Hornick & Co., Inc. v. Darbyco, Inc.*, 2015 WL 13745787 (SDNY August

19, 2015); *see also Lenard v. Design Studio*, 889 F.Supp.2d 518, 527 (SDNY 2012); *Nationstar Mortgage LLC v. Atanas*, 285 F.Supp.3d 618 (WDNY 2018).

Under New York law, a plaintiff who fails to demonstrate actual damages is entitled to nominal damages. *Quik Park West LLC v. Bridgewater Operating Corporation*, 189 A.D.3d 488, 489 (1st Dept. 2020).

Here, Plaintiff failed to prove the unpaid principal balance, by admissible evidence. Hence, the Court, if not dismissing this action, should either award no damages or nominal damages.

In numerous federal cases, this and other federal courts have repeatedly held that proof of the unpaid principal balance requires more than self-serving testimony and a copy of the note. *See, e.g. Happy Homes, LLC v. Jenerette-Snead*, 2016 WL 6599826, at *5 (EDNY November 7, 2016) (affidavit from Yonel Devico; "In the context of a default judgment in a foreclosure action, several courts in the Eastern District of New York have required more than production of the initial mortgage and an affidavit stating the outstanding principal on a loan") (citing in support *see OneWest Bank, N.A. v. Vaval,* 2016 WL 3945342, at *3 (EDNY July 19, 2016); *CIT Bank, N.A. v. Paganos,* 2016 WL 3945343 at *2 (EDNY July 19, 2016); *Eastern Sav. Bank, FSB v. Whyte*, 2015 WL 790036, at *6 (EDNY February 24, 2015)); *Atanas*, 285 F.Supp.3d at 618 ("several other decisions in this Circuit have 'required more than production of the initial mortgage and an affidavit stating the outstanding principal on a loan"); *OneWest Bank, N.A. v. Hawkins*, 2015 WL 5706945, at *8 (EDNY September 2, 2015); *see also Avail 1 LLC v. Lemme,* 2024 WL 4566273, at *4 (NDNY October 24, 2024) (in a particularly on point quote: "Plaintiff does not supply a copy of Decedent's payment history to support the unpaid principal balance. This deficiency is especially critical in light of the multiple numbers presented throughout Plaintiff's submissions to the Court, as discussed in Section III(C). The unpaid principal amount listed in Mr. Fratangelo's

affidavit is the same as the amount listed in the August 18, 2023 "Mortgage Due & Payable Notification," but there is no documentation to indicate how this number was calculated"). The rationale is that "without providing substantiation for the unpaid principal balance, the Court cannot accurately calculate the total interest owed." *Atanas*, 285 F.Supp.3d at 627.

New York law similarly requires that the outstanding principal balance be proven by admissible evidence. In the vast majority of New York cases, that evidence is business records of the plaintiff or servicer. When, as here, no such supporting records are admitted, the testimony provided is inadmissible hearsay. *See, e.g. U.S. Bank National Association v. Tenenbaum*, 228 A.D.3d 694, 696 (2nd Dept. 2024)[2] ("the plaintiff's affiant failed to annex or otherwise product the subject business records. 'Under the circumstances, the affidavit relied upon by the plaintiff constituted inadmissible hearsay and lacked probative value, and the referee's findings with respect to the total amount due upon the mortgage were not substantially supported by the record'") (citing *Bank of N.Y. Mellon v. Fontana*, 186 A.D.3d 445, 446 (2nd Dept. 2020); *see Bank of Am., N.A. v. Gonzalez*, 219 A.D.3d 433, 436 (2nd Dept. 2023); *Wells Fargo Bank, N.A. v. Yesmin*, 186 A.D.3d 1761, 1762 (2nd Dept. 2020)); *Wells Fargo Bank, N.A. v. Carrington*, 221 A.D.3d 746, 749 (2nd Dept. 2023) (" 'Without submission of the business records, a witness's testimony as to the contents of the records is inadmissible hearsay'") (citing *HSBC Bank USA, N.A. v. Boursiquot*, 204 A.D.3d 982-983 (2nd Dept. 2022) (quoting *Wells Fargo Bank, N.A. v. Atedgi*, 189 A.D.3d 934, 936 (2nd Dept. 2020)); *Deutsche Bank National Trust Company v. Gulati*, 188 A.D.3d 999, 1001 (2nd Dept. 2020) ("since the plaintiff failed to attach the business records upon which Gonzales relied in her affidavit, her assertions based upon those records constituted inadmissible hearsay")

---

[2] This is a tiny fraction of the number of reported New York cases on this point since *Gordon*, 171 A.D.3d at 205 ("it is the business record itself, not the foundational affidavit, that serves as proof of the matter asserted") (citations omitted).

(citing *see Wells Fargo Bank, N.A. v. Bakth*, 180 A.D.3d 1106, 1107 (2nd Dept. 2020); *Federal Natl. Mtge. Assn. v. Brottman*, 173 A.D.3d 1139, 1141 (2nd Dept. 2019)).

On point is *Toiny LLC v. Lindsay*, where this Court refused to grant a judgment of foreclosure and sale based on proof deficiencies, even though the defendant defaulted. 368 F.Supp.3d 453 (EDNY 2019) (Matsumoto, J.). Toiny LLC is owned or controlled by Yonel Devico. *See Toiny LLC v. Donato*, 2018 WL 5817538 (SDNY 2018) (affidavit of Yonel Devico in support of Toiny LLC). In essence, the plaintiff could not explain "how it arrived at the $113,976.01 figure" and why it had attempted to reclassify payments from principal to interest to arrive at a $150,000.00 figure. *Id.* "Toiny concludes from [a 2018 letter from Popular Bank and attached schedule] that Lindsay made no payments after July 1, 2009. This is a dubious conclusion." *Id.* at 457. This Court noted, however, that "the Popular Letter itself, dated June 5, 2018, does not state that Lindsay stopped making payments on July 1, 2009." *Id.* at 457-458. This Court noted that, due to the language of Popular's letter, "the absence of documentation cannot be the basis to conclude that other payments were not made or that payments ceased on a certain date." *Id.* at 458.

The Court in *Lindsay* permitted an opportunity for renewal, but warned that "any renewed motion failure to correct these identified errors and to address the issues identified" by the Magistrate Judge "may result in zero damages being awarded." *Id.* Rather than renew, Toiny LLC voluntarily dismissed the action and recommenced in New York State court.

This Court's conclusion in *Lindsay*, that "the absence of documentation cannot be the basis to conclude that other payments were not made or that payments ceased on a certain date" is completely correct, consistent with New York law, and applicable here. *Id.*

Plaintiff's initial problem is that the outstanding principal balance testified to by Yonel Devico at trial is unclear and uncertain. Yonel Devico's testimony was that, "that number was $104,000 and like a few hundreds," which is not a reasonably certain number. *Id.*; p. 58 LL 3-5.

Secondly, Yonel Devico did not provide testimony as to how, exactly, he had knowledge of the unpaid principal balance, so as to give competence to his testimony. FRE § 602. His testimony established that his only connection to this loan arose when he purchased it in either 2017 or 2019. Trial Tr. p. 87 LL 12-14; **Exhibit B**, Response No. 4. Indeed, his claim to *any* knowledge of this loan, beyond his personal experience after acquisition, was predicated upon non-specific, vague and conclusory claims of alleged oral representation(s) by his predecessor-in-interest, which is classic hearsay. Trial Tr. p. 31 LL 8-21, LL 23-25, p. 32 LL 1-7; FRE § 802. Under New York law, absent a business record substantiating the unpaid principal balance, all of Yonel Devico's testimony about the principal balance is inadmissible hearsay. *See, e.g. M&T Bank v. Bonilla*, 215 A.D.3d 813, 814-815 (2nd Dept. 2023); *Ocwen Loan Servicing, LLC v. Coles*, 223 A.D.3d 678, 680 (2nd Dept. 2024) ("the Supreme Court should not have confirmed the referee's report which was based upon inadmissible hearsay and not supported by record evidence") (citing *see HSBC Bank USA, N.A. v. Delgado*, 211 A.D.3d 920, 921 (2nd Dept. 2022)).

Thirdly, no business records evidencing the "$104,000 and a few hundreds" was ever admitted into evidence. Neither the PHH records nor the LIR indicate that the amount due is "$104,000 and like a few hundreds," but, rather a different, larger sum of $108,801.24. Hence, neither the PHH nor the LIR "actually evince the facts for which [it is] relied upon." *Pickering-Robinson*, 197 A.D.3d at 759.

Finally, Yonel Devico indicated that the unpaid principal balance was calculated by "advanc[ing] the due date and, therefore, the amortization schedule had to change and some the

principle were removed."  Trial Tr., p.57 LL 21-23.  However, no amortization schedule, written calculation, or explanation for how the calculation was performed was ever introduced into evidence by Plaintiff to explain with specificity how this figure was reached.  *Toiny*, 368 F.Supp.3d at 458; *Windward Bora LLC v. Valencia*, 2022 WL 872506, *6 (EDNY March 24, 2022) ("Plaintiff has not submitted any local documentation to corroborate the outstanding $78,169.22 balance" and "the Court cannot properly calculate the outstanding interest without verifying the outstanding principal").

Notably, the fact of advancing the due date is not the *per se* problem here and, it is a red herring.  Trial Tr. p. 105 LL 8-12; *Islam*, 193 A.D.3d 1016[3].  As noted, *infra*, each installment payment is its own cause of action.  *Cohen*, 80 A.D.3d at 754.  A payment history, in one or more parts, from origination to commencement would conceivably support each and every cause of action for each missed installment payment.  *Id.*  Hence, advancing the due date is a plaintiff's choice of what default it seeks to prove, as it can sue upon any one or more specific defaults as a basis for a mortgage foreclosure under New York law and/or waive prior defaults.  New York even permits a cause of action for partial mortgage foreclosure, without acceleration.  *NYCTL 1999-1 Trust v. 573 Jackson Ave. Realty Corp.*, 13 N.Y.3d 573, 578 (2009); *Prudence Co. v. Sussman*, 143 Misc. 686, 687 (Queens Sup. Ct. 1932) (partial mortgage foreclosure of $25,000.00 of $100,000.00 note and mortgage, "subject to a continuing lien for the balance of said mortgage").

The actual problem is proof: the absence of a payment history between 2012 and 2019 means the Court cannot know that the unpaid principal balance alleged by Plaintiff is, in fact,

---

[3] In *Islam*, the Second Department noted the advanced due date in dicta, stating, "Noting that the two complaints alleged different dates of default, the plaintiff's attorney affirmed that 'the default date was advanced and has a different unpaid balance.'"  To my knowledge, no Appellate Department has ever affirmed the practice.  Moreover, *Islam*, as legal precedent, was overruled by statute as to its actual legal holding that a voluntary discontinuance revokes acceleration.  This holding and other, similar cases, were overruled by statute by the enactment of the Foreclosure Abuse and Prevention Act of 2022 ("FAPA"), and more specifically NY CPLR § 3217(e).

correct.  Trial Tr. P. 48 LL 3-4 ("Payment history is a list of all the payments made or not by the borrower during the life of the loan").  "Where a plaintiff 'provides no documentation' to support an affidavit's assertion of an unpaid principal, it is appropriate to deny the damages request.'" *Valencia*, 2022 WL 872506, at *6 (citing *Arcpe Holding, LLC v. 9Q4U5E LLC*, 2021 WL 8316275, at *6 (EDNY August 11, 2021) (quoting *Paganos*, 2016 WL 3945343, at *1); *Wilmington Sav. Fund Socy., FSB as trustee of Aspen Holdings Tr. v Fernandez*, 712 F.Supp.3d 324, 335 (EDNY 2024) ('[w]ith respect to damages, even if the Court were to find liability, there would be insufficient 20information before the Court to determine damages to a reasonable certainty because Wilmington's only proof of damages is the mortgage, the note, and Wilmington's own affidavit stating the amount of the outstanding principal).  "[T]he Court cannot properly calculate the outstanding interest without verifying the outstanding principal." *Id.* (citing *see Vaval*, 2016 WL 3945342, at *3.

Examining **Exhibit 7**, PHH 0016 to 0017 demonstrates how each month from May 1, 2007 to May 28, 2009 has *some* sort of transaction evidencing late fees and payments.  This recordation only stops shortly after the loan is charged off on May 28, 2009.  *Id.*  After that, there are no more entries because, as Benjamin Verdooren explained, a full charge off occurred of "everything on the loan that's due and owing plus fees, principal balance; everything."  Verdooren Tr. p. 68 LL 7-11.  This payment history could have potentially supported, for example, a timely mortgage foreclosure action predicated on a payment default for any installment between August 2008 and May 2009 based on a $108,861.80 unpaid principal balance, but not subsequent installment payments as the loan had been charged off.  Plaintiff, however, has not entered into evidence a complete payment history for the January 1, 2014 default or to substantiate how it arrived at "$104,000 and a few hundreds" as the principal balance.  Indeed, there is little dispute that there

is and remains a vital gap in Windward's records between February 2012 and September 2019. ECF Dkt. No. 108. Based on this trial record, it is clear that Plaintiff, Windward, and Yonel Devico have no knowledge of any kind as to what, if anything, occurred between February 2012 and September 2019 on this loan. Trial Tr. p. 95 LL 20-23. Certainly, Yonel Devico does not know, as he simply assumed the new principal balance. *Id.*

Accordingly, Plaintiff's damages claim, "$104,000 and like a few hundreds" does not provide "reasonable certainty" that that sum is the correct unpaid principal balance. *Toiny*, 368 F.Supp.3d at 459, 460. Yonel Devico testified that he simply assumed the correctness of the LIR based on alleged oral representations and made no efforts to confirm this information, other than an unreturned call to the borrower. Trial Tr. p. 39 LL 2-8, 12-20. Plaintiff has not, therefore, proven at trial that "$104,000 and like a few hundreds" is the unpaid principal balance as of December 30, 2019.

Having failed to prove the principal balance with reasonable certainty, the Court's choice, on this issue, is whether to hold that the sum due is zero or award nominal damages.

As a matter of well settled New York law, when a plaintiff "fail[s] to prove actual damages [they] therefore were entitled to nominal damages only." *Quik Park West LLC*, 189 A.D.3d at 489. Nominal damages would be, effectively, $1.00 plus, perhaps, interest on that sum at the Note rate.

Alternately, this Court has the power to award zero damages. *Lindsay,* 368 F.Supp.3d at 460 (citing *Louis Hornick & Co.,* 2015 WL 13745787, at *5).

**3. The Credible Evidence Establishes That Crosby Capital LLC Acquired the Note and Mortgage from RCS Recovery Services, LLC on or about September 20, 2019.**

One issue that arose during trial was Yonel Devico's testimony that Windward obtained the Note and Mortgage here "sometime in 2017" from RCS. Trial Tr. p. 11 L 25, p. 12 L 1-3. This testimony is unsupported by any documentary evidence and is inconsistent with Windward's Interrogatory Responses, verified by Yonel Devico, which unambiguously states September 20, 2019 instead. **Exhibit B**, Response No. 4. Accordingly, the Court should disregard Yone Devico's testimony that he obtained the Note and Mortgage in 2017[4]. *Reisner v. General Motors Corp.*, 671 F.2d 91, 93 (2nd Cir. 1982) (disregarding factual claims at summary judgment which contradict prior statements, including in interrogatories) (citing *see Schwimmer v. Sony Corp. of America*, 637 F.2d 41, 45-46 (2nd Cir. 1980); *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2nd Cir. 1969)).

It is reasonable to infer that this claim was made for the first time at trial so as to avoid the parol evidence bar on testimony by Yonel Devico as to alleged oral communications with RCS pursuant to **Exhibit F** ¶ 3(c) and **Exhibit G** ¶ 2.3. Trial Tr. p. 80 LL 18-25, p. 81 LL 1-10, p. 82 LL 10-20. The language in **Exhibit F** ¶ 3(c) and **Exhibit G** ¶ 2.3 are clear and unambiguous merger provisions, disclaiming all warranties and representations by the seller, RCS and Crosby respectively. Hence, they bar parol evidence by Yonel Devico as to representations by RCS or Crosby Capital. *See, e.g. Sabo v. Delman*, 3 N.Y.2d 155, 161 (1957) ("The parol evidence rule forbids proof of extrinsic evidence to contract or vary the terms of a written instrument…"); *see, e.g. Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A.*, 247 F.Supp.2d 352, 368 (SDNY 2002) ("It is well-established, however, that a party to a contract cannot rely on oral

---

[4] This claim is not credible, as being raised for the first time at trial and being utterly inconsistent with **Exhibit B**, Response No. 4.

representations where a contract specifically disavows the incorporation of non-written representations") (citing *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 323 (1959)).

In addition, there was some dispute over whether **Exhibit F**, for example, actually referenced the instant loan. Trial Tr. p. 80-82, p. 81 LL 3-10. After the Note inspection on December 10, 2024, **Exhibit F** clearly refers to this loan. On **Exhibit F**, Schedule A, the loan sale agreement references the seller's Loan Number 146847, as RCS' loan number. **Exhibit 3,** which Yonel Devico testified came from RCS, was provided partially redacted in October 2020, reflects a loan number of "6847" and purports to refers to the instant loan. Trial Tr. p. 77 LL 4-20. On pages 9 and 10 of **Exhibit 8**[5], being the allonges from RCS to Windward and Windward to Plaintiff alleged to be for this specific loan, both reference "000146847" and "146847" respectively as the loan number. In sum, the loan number on the allonges to the Note from RCS to Windward and Windward to Plaintiff match the loan number on **Exhibit F,** Schedule A, as well as the partially redacted loan number on **Exhibit 3**. As FRCP § 5.2 requires the redaction of financial-account information for privacy protections, it strains credulity to believe that **Exhibit F** is referencing a different loan, especially in light of **Exhibit B**, Response No. 4. Trial Tr. p. 81 LL 2-10.

### B. The Admissible Evidence Adduced Establishes That No Sums are Due on the Loan.

The Defendant's fifth affirmative defense is that, "No debt is owed to Plaintiff on the loan underlying the mortgage." Defendant's fourth affirmative defense is "waiver." Defendant's sixth affirmative defense is "Payment, release, accord and/or satisfaction." Defendant's fourteenth

---

[5] Exhibit 1 was improperly redacted as to the loan number, pursuant to FRCP § 5.2. The entire loan number on the allonge to Windward was redacted and unreadable. *Windward Bora LLC v. Durkovic as Trustee of McQueen Family Trust*, 2022 WL 16702694, *4 (EDNY November 2, 2022) ("Plaintiff's unilateral and undisclosed redaction of the Proof of Filing Statements violated [FRCP] 5.2").

affirmative defense is laches and estoppel. The admissible evidence adduced at trial establishes these affirmative defenses under the preponderance of the evidence standard.

The factual basis for these defenses are the following. First, the underlying loan was charged off on May 28, 2009 as a "full charge off." Verdooren Tr. p. 76 LL 20-24; **Exhibit 5**, PHH 0008-0009. A full charge off is a charge off of "everything on the loan that's due and owing plus fees, principal balance; everything." Verdooren Tr. p. 68 LL 7-11. In short, the loan was reduced to a $0.00 balance, including the principal balance. *Id.* at LL 12-14. The Pages were then notified of the charge-off and thus that the principal balance was $0.00. Verdooren Tr. p. 71 LL 18-20. On July 2, 2012, Ocwen notated that the account reflected a balance due of $0.00. **Exhibit 5**, PHH 0013 ("credit issue – send aud to bureaus for b1 reported acct serv rel on 02/20/12 was charge off on 05/28/09 (05-L-O) 0 bal"). Beyond this, Verdooren stated that, "I don't remember how GMAC exactly handled charge-offs back then." Verdooren Tr., p. 32 LL 7-8.

These facts constitute a waiver. GMAC, by charging off the loan and reducing the principal balance to $0.00, waived the principal and interest. *See, e.g. Cach LLC v. Fatima*, 32 Misc.3d 1231(A) (Nass. Dist. Ct. 2011) ("Absent clarification of the 'charge off,' the bank's ability to 'assign' the 'charged off' debt is open to question). This waiver continued until, at the earliest, September 2019, a decade long period. In *Haden v. Coleman*, the Court of Appeals held that, "if from his acts it is inferable that he intended to waive it, and intended that the plaintiffs should so understand, and the latter delayed demanding the balance for a considerable period upon the faith of the waiver, it is unjust to permit the defendant to revive the condition…" 73 N.Y. 567, 570 (1878); *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184 (1982) ("A waiver, to the extent it has been executed, cannot be expunged or recalled, but, not being a binding agreement, can, to the extent that it is executory, be withdraw, provided the party whose

performance has been waived is given notice of withdrawal and a reasonable time after notice within which to perform").

In addition, the PHH records and the trial testimony establish that no sums are due Plaintiff. At trial, Devico admitted that PHH's records reflect that the principal balance is $0.00 as of October 7, 2020. Trial Tr. p. 62 LL 20-25, p. 63 LL 1-5, 13-21, p. 64 LL 5-9. These records "actually evince the facts for which [they are] relied upon." *Pickering-Robinson*, 197 A.D.3d at 759. Hence, a preponderance of the admissible evidence establishes that the principal balance is $0.00.

**C. There is No Evidence Plaintiff Served a NY RPAPL § 1303 Notice upon Defendant.**

Defendant's seventeenth affirmative defense is that Plaintiff failed to serve Defendant with a notice to tenants pursuant to NY RPAPL § 1303. Plaintiff had a burden to introduce evidence that it served said NY RPAPL § 1303 notice. No evidence was offered at trial and, thus, Defendant has met its burden of establishing that Plaintiff did comply not comply with NY RPAPL § 1303 notice requirement as "foreclosing party has the burden of showing compliance therewith and, if it fails to demonstrate such compliance, the foreclosure action <u>will be dismissed</u>." *Green Mtn. Holdings (Cayman) Ltd. v 501 Lafayette Ave LLC*, 2023 WL 6594003, at *5 (EDNY August 18, 2023), *report and recommendation adopted sub nom.* 2023 WL 5993166 (EDNY September 15, 2023) (emphasis added) (citing *First Nat'l Bank of Chicago,* 73 A.D.3d 162, 166 (2nd Dept. 2010)*; Onewest Bank, N.A. v. Mahoney*, 154 A.D.3d 770, 771 (2nd Dept. 2017) (quoting "Proper service of an RPAPL 1303 notice is a condition precedent to the commencement of a foreclosure action, and noncompliance mandates dismissal of the complaint")).

"A foreclosing mortgagee that does not clearly establish compliance with RPAPL's notice requirements," including those set forth under Section 1303, " 'fail[s] to meet its prima facie burden of establishing its entitlement to judgment as a matter of law.' " *United States v. Starr*, 2017 WL 4402573, at *4 (SDNY September 29, 2017) (citing *see Deutsche Bank Nat'l Trust Co. v. Spanos*, 102 A.D.3d 909, 910 (2nd Dept. 2013); *see also Bank Nat. Ass'n v. Carey*, 137 A.D.3d 894 (2nd Dept. 2016)) (emphasis added); *see also Plenitude Capital LLC v Utica Ventures, LLC,* 2019 WL 4014840, at *4-5 (EDNY June 11, 2019)*, report and recommendation adopted,* 2019 WL 3543610 (EDNY Aug. 5, 2019)); *U.S. Bank National Association v. 22-33 Brookhaven, Inc.*, 219 A.D.3d 657, 663-664 (2nd Dept. 2023).

As the Plaintiff failed to meet its burden to demonstrate compliance with NY RPAPL § 1303, dismissal is warranted of this action. *See Green Mtn. Holdings (Cayman) Ltd. v McEachern*, 2024 WL 748672, at *5 (EDNY February 23, 2024).

### D.  There is No Evidence Plaintiff Mailed a NY RPAPL § 1304 Notice.

The Defendant's tenth affirmative defense is that the Plaintiff failed to properly serve a NY RPAPL § 1304 notice.  The record is devoid of evidence that the Plaintiff complied with NY RPAPL § 1304 and thus the Defendant has demonstrated that there is no evidence that the Plaintiff complied with NY RPAPL § 1304 prior to commencement of this action.

"Courts must determine whether a plaintiff has complied with RPAPL § 1304, even on a default judgment, because failure to comply with § 1304 is a sufficient basis to deny foreclosure relief." *Miss Jones, LLC v. Viera*, 2020 WL 3002359, at *1 (EDNY January 29, 2020) (citing *see, e.g. Nationstar Mortg. LLC v. Nedza*, 315 F.Supp.3d 707, 710 (WDNY 2018); *CIT Bank, N.A. v. Donnatin*, 2020 WL 248996, at *3-4 (EDNY January 16, 2020); *accord Wilmington Sav. Fund*

*Soc'y, FSB v. White*, 2019 WL 4014842, at *4 (EDNY May 28, 2019)); *see also Freedom Mtge. Corp. v Thomas*, 2024 WL 2808369, at *3 (WDNY June 3, 2024); *CIT Bank, N.A. v McDonnell*, 2020 WL 13157556, at *2 (EDNY June 10, 2020).  "When a lender, assignee, or mortgage servicer fails to demonstrate strict compliance with RPAPL § 1304, its foreclosure action must be dismissed.  *Courchevel 1850 LLC v. Stern*, 2018 WL 3193210, at *2 (EDNY June 28, 2018) (citing *Aurora Loan Services v. Weisblum*, 85 A.D.3d 95 (2nd Dept. 2011); *Silver*, 73 A.D.3d at 166; *In re Gill*, 529 B.R. 31, 41 (WDNY BK 2015)) (NY RPAPL § 1304 notice required even if borrower no longer lives at home, but did at origination).

### E.  The 2014 Consent Order, Exhibit E, is a Public Record and Should Be Admitted.

Finally, the Consent Order dated December 19, 2014 between the New York State Department of Financial Services, Ocwen Loan Servicing, LLC and Ocwen Financial Corporation ("Consent Order"), submitted as **Exhibit E**, should be admitted as evidence as a public record pursuant to FRE § 803(6) by judicial notice under FRE § 201(b)(2).  Defendant avers that the authenticity of the Consent Order is beyond cavil as it is directly available from the NYS DFS website under FRE § 201(b)(2).

The Consent Order is and was openly notorious in 2014 and 2015.  The Consent Order required the Chairman of Ocwen, William C. Erbey to resign and required Ocwen to create two funds of $100 million and $50 million each, with the latter compensating New York homeowners.  The Consent Order also continued a Compliance Monitor over Ocwen and its activities.  These events were well-known and contemporaneously reported.  Defendant avers that judicial notice can be taken of the Consent Order pursuant to FRE § 201(b)(2) given that the Consent Order is readily and freely available through the NYS DFS website.

As will be discussed below, the relevance of the Consent Order goes to the weight of **Exhibit 7** and, thereby, to a lesser degree, **Exhibit 3** and Yonel Devico's testimony. *See, e.g.* Trial Tr. p. 53 LL 21-24, p. 56 LL 8-14 ("So when we received the Ocwen documents[6], it just confirmed that the RCS records were correct and true; and, therefore, that our records were correct and true"). Specifically, ¶ 14 of the Consent Order is the relevant portion insofar as Ocwen stipulated to the inaccuracy of its records prior to December 2014.

The source of **Exhibit E** is the NY Department of Financial Services ("DFS"). A copy of the Consent Order is readily available directly from the DFS website through a contemporaneous press release dated December 22, 2014, which contains a link to the Consent Order on the bottom. https://www.dfs.ny.gov/reports_and_publications/press_release/pr1412221. *See also* **Exhibit AA[7].** The details of the press release confirm the contents of the Consent Order. The link to the Consent Order in the press release is hosted by the NYS DFS itself and publicly and readily available: https://www.dfs.ny.gov/system/files/documents/2020/04/ea141222_ocwen.pdf. This is the same document as **Exhibit E**. Defendant avers that the Court may judicially notice the contents of the Consent Order pursuant to FRE § 201(b)(2) as non-hearsay under FRE § 803(8). As can be seen from the links, the source of the Consent Order is NYS DFS, a governmental agency, and the accuracy of the source cannot be reasonably questioned.

The existence of the Consent Order has also been referenced in other actions, including in this Court. *See, e.g. Harte v. Ocwen Financial Corp.*, 2018 WL 1830811 (FN11) (EDNY February 8, 2018) (Reyes, M.J.) (noting the Compliance Monitor's report regarding the Consent Order - "On December 22, 2014, [NYDFS] and Ocwen entered into a Consent Order ["*Consent II*"], which, among other requirements, mandates numerous governance, management and operational

---

[6] In October 2020. ECF Dkt. No. 29.
[7] This exhibit is solely submitted pursuant to FRE § 1005 in support of the admission of **Exhibit E** as a public record.

changes. This report references [*Consent II*] as necessary into our observations and recommendations"); *Deutsche Bank Nat. Trust Co. v. Husband*, 47 Misc.3d 1206(A) (Kings Sup. Ct. 2015) ("in light of the third consent order entered into between Ocwen and the New York State Department of Financial Services in December of 2014…").

Thirdly, the Consent Order was contemporaneously reported by the New York Times on December 22, 2014 because one of its stipulations was that William C. Erbey, Ocwen's chairman, resign. **Exhibit E** ¶ 57; **Exhibit BB[8]. Exhibit BB** is a New York Times article which is self-authenticating under FRE § 902(6). The New York Times article is further confirmation of the accuracy of the contents of the Consent Order.

Penultimately, to administer the $50 million fund created by the Consent Order, a website was created to facilitate payment of homeowner claims from the fund. https://www.ocwennydfspayments.com/en. While the website remains operational, its links to the press release and Consent Order, linking to the NYS DFS website, no longer function correctly. The website describes the Consent Order and is titled, "Ocwen NYDFS Consent Order," bearing Ocwen's former logo on the upper left corner. One of the pages, entitled, "Tax Information" provides an extensive disclosure to eligible borrowers about the payments and the Consent Order. https://www.ocwennydfspayments.com/en/Home/Taxes.

Finally, the Consent Order is sufficiently notorious and well known that at the deposition of Benjamin Verdooren, an employee of PHH and formerly of Ocwen and GMAC, I asked him if he was "aware of the December 2014 consent order with the State of New York," which he admitted to familiarity with. Verdooren Tr. p. 81 LL 8-12. Mr. Verdooren did not ask me to further describe the Consent Order or to examine a copy of the same. Indeed, Mr. Verdooren, when asked about

---

[8] This document is solely submitted pursuant to FRE § 1005 in support of the admission of **Exhibit E** as a public record.

the admission in the Consent Order that Ocwen's records are not reliable, acknowledged that "I'm aware that it's written in there, but it's not an admission of anything." *Id.* at LL 13-19.

As the source of the Consent Order is the NYS DFS website, as evidenced by a NYS DFS press release with link to the Consent Order, it is respectfully submitted that the Consent Order is properly judicially noticed under FRE § 201 as an adjudicative fact.

The Consent Order is excluded from hearsay under FRE § 803(8). "A record or statement of a public office [is admissible as an exception to hearsay] if: (A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness."

The Consent Order easily clears these requirements. In the second "WHEREAS" provision, on page 1, it recites that "Ocwen is a New York State-licensed mortgage banker and mortgage loan servicer, pursuant to the New York Banking Law, and the Department is responsible for its supervision and regulation." **Exhibit E**, p. 1. It further notes, on page 2, that the Ocwen and Department entered into an Agreement on Mortgage Servicing Practices in 2011, the violation of that agreement in 2012 pursuant to a "targeted examination," and the successive consent orders and violations thereof. *Id.* at p. 2. These facts are stipulated to by Ocwen. *Id.* The facts, as stipulated by Ocwen and the DFS, were clearly "a matter observed while under a legal duty to report" since they occurred in the context of "targeted examinations" performed by DFS and/or an independent compliance monitor. *Id.* Alternately, they arose from a legally authorized investigation resulting in a non-criminal agency action, thus satisfying (iii). *Id.* To date, Plaintiff

has not shown that "the source of information or other circumstances indicate a lack of trustworthiness."

The relevance of the Consent Order lies in that it calls into question the accuracy of the entries in **Exhibit 7,** and thus its weight. In the Consent Order ¶ 14, Ocwen stipulated that "the Compliance Monitor determined that Ocwen's information technology systems are a patchwork of legacy systems and systems inherited from acquired company, many of which are incompatible. A frequent occurrence is that a fix to one system creates unintended consequences in other systems. As a result, Ocwen regularly gives borrowers incorrect or outdated information, sends borrowers backdated letters, unreliably tracks data for investors, and maintains inaccurate records. There are insufficient controls in place – either manual or automated – to call all of these errors and resolve them." This unflattering picture of Ocwen is only relevant because **Exhibit 7** are records from Ocwen for the period 2007 to 2012, the same time period covered by the various Consent Orders and thus potentially inaccurate.

To the extent **Exhibit 3** contains some of the same information as **Exhibit 7**, **Exhibit 3**'s weight is further reduced by the possibility that it may continue those same errors, as no testimony was adduced as to the source of the information in **Exhibit 3**. Trial Tr. p. 36 L 16-18, 37 L 25, p. 38 L 1. All Yonel Devico could testify to was that the RCS created the document. *Id.* at p. 36 LL 19-20.

Accordingly, the Consent Order should be admitted into evidence.

## **CONCLUSION**

For all the foregoing reasons, Defendant's motion for summary judgment should be granted in its entirety, this action dismissed as against Defendant, and for such other and further relief as may be just.

DATED:   January 10, 2025
               Washingtonville, NY

_____
Daniel H. Richland, Esq.
Richland & Falkowski, PLLC
5 Fairlawn Drive, Suite 204
Washingtonville, New York 10992
*Counsel for Defendant*