**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------------------X

FTS CAPITAL, LLC,

                        **Plaintiff,**

  -against-

 

 

STUYVESANT CONSTRUCTION CORP., HSBC BANK
USA NATIONAL ASSOCIATION,

                        **Defendant.**
------------------------------------------------------------------------------------X

Docket No.:
19-CV-07275(TAM)


SERVED:
APRIL 18, 2025

## <u>POST-TRIAL MEMORANDUM</u>

Richland & Falkowski, PLLC
Daniel H. Richland, Esq.
5 Fairlawn Drive, Suite 204
Washingtonville, New York 10992
*Counsel for Defendant*

# TABLE OF CONTENTS

Preliminary Statement………………………………………………………..		1

POINT I:        THE PLAINTIFF FAILED TO ESTABLISH ITS
CASE IN CHIEF BY A PREPONDERANCE OF THE
EVIDENCE……………………………………………………….		2

      1.  Plaintiff's Brief Does Not Explain How It Proved
a Default on January 1, 2014 at Trial ..……………………..		4

      2.  Plaintiff's Brief Fails to Explain How It Proved the
Principal Balance on December 30, 2109, the Date
this Action Was Commenced………………………………..		9

POINT II:     THE EVIDENCE AND TESTIMONY ADDUCED
AT TRIAL DOES NOT ESTABLISH A DEFAULT
ON JANUARY 1, 2014 OR THE SUMS ALLEGEDLY
DUE AND OWING..…………………………………………..		11

POINT III:    PLAINTIFF'S BRIEF FAILS TO ADDRESS
DEFENDANT'S SEVENTEENTH AFFIRMATIVE
DEFENSE, WHICH IS PART OF PLAINTIFF'S
BURDEN AT TRIAL….……………………………………..		18

POINT IV:    PLAINTIFF FAILED TO MEET ITS BURDEN
OF SHOWING COMPLIANCE WITH NY
RPAPL § 1304 OR THE INAPPLICABILITY
OF NY RPAPL § 1304………………………………………..		19

POINT V:     PLAINTIFF FAILED TO ESTABLISH THAT
THIS LOAN WAS NOT CHARGED-OFF IN
MAY 2009, THAT THE SAME DID NOT
CONSTITUTE A WAIVER, AND THAT, AS
A RESULT, THIS LOAN IS NOW
UNENFORCEABLE……..…………………………………...		20

CONCLUSION………………………………………………………………		22

# TABLE OF AUTHORITIES

*A/SL DFV, LLC v. C.A.R.S. Constr., LLC,*
    161 A.D.3d 921 (2nd Dept. 2018)      3

*Avail 1 LLC v. Lemme,*
    2024 WL 4566273 (NDNY October 24, 2024)      10-11

*Bank of America, N.A. v. Gonzalez,*
    219 A.D.3d 433 (2nd Dept. 2023)      10

*Bank of N.Y. Mellon v. Giammona*, 219 A.D.3d 436
    (2nd Dept. 2023)      12

*Bank of New York Mellon v. Gordon*,
    171 A.D.3d 197 (2nd Dept. 2019)      9, 10, 12, 13

*Cach LLC v. Fatima*,
    32 Misc.3d 1231(A) (Nass. Dist. Ct. 2011)      22

*CIT Bank, N.A. v. Paganos*,
    2016 WL 3945343 (EDNY July 19, 2016)      10

*Deutsche Bank National Trust Company v. Saavedra,*
    228 A.D.3d 828 (2nd Dept. 2024)      7, 8

*Eastern Sav. Bank, FSB v. Whyte*,
    2015 WL 790036 (EDNY February 24, 2015)      10

*First Horizon Bank v. Moriarty-Gentile*,
    2013 WL 635243 (EDNY February 20, 2013)      14

*Fischl v. Armitage*, 128 F.3d 50 (2nd Cir. 1997)      3

*Freedom Mortgage Corporation v. Engel*,
    37 N.Y.3d 1 (2021)      21

*Happy Homes, LLC v. Jenerette-Snead*,
    2016 WL 6599826 (EDNY November 7, 2016)      10

*IndyMac Venture, LLC v. Amus*,
    164 A.D.3d 883 (2nd Dept. 2018)      3

*JP Morgan Chase Bank v. Twersky*,
    202 A.D.3d 769 (2nd Dept. 2022)      19

*JPMorgan Chase Bank NA v. Wenegieme*,
    162 A.D.3d 876 (2nd Dept. 2018)    3

*Lavin v. Elmakiss*, 302 A.D.2d 638 (3rd Dept. 2003)    5

*Leitner v. Clien Services, LLC*,
    2020 WL 3489482 (EDNY June 26, 2020)    21

*Loicano v. Goldberg*,
    240 A.D.2d 476 (2nd Dept. 1997)    5

*Marine Midland Bank-Southern v. Thurlow*,
    53 N.Y.3d 381 (1981)    16

*MTGLQ Investors, L.P. v. Daleo*,
    228 A.D.3d 929 (2nd Dept. 2024)    12, 13

*Nationstar Mortgage LLC v. Atanas*,
    285 F.Supp.3d 618 (WDNY 2018)    10, 11

*Naval Williams Films v. Branca*,
    2016 WL 7238960 (SDNY December 14, 2016)    16

*O'Hearn v. Bodyonics, Ltd.*,
    22 F.Supp.2d 7 (EDNY 1998)    16

*OneWest Bank, N.A. v. Hawkins*,
    2015 WL 5706945 (EDNY September 2, 2015)    10

*OneWest Bank, N.A. v. Vaval*,
    2016 WL 3945342 (EDNY July 19, 2016)    10

*Pagano v. Smith*, 201 A.D.2d 632 (2nd Dept. 1994)    5

*People v. Barnes*, 177 A.D.2d 989 (4th Dept. 1991)    9, 10

*People v. Olivero*,
    27 Misc.3d 1218(A) (N.Y. Crim. Ct. 2010)    9

*People v. Ross*, 12 Misc.3d 755 (Kings Crim. Ct. 2006)

*Student Loan Solutions, LLC v. Colon*,
    231 A.D.3d 991 (2nd Dept. 2024)    21

*Toiny v. Donato*, 2018 WL 5817538 (SDNY 2018)    8

*Toiny v. Lindsay*, 368 F.Supp.3d 453 (EDNY 2019)  7, 8

*U.S. Bank Natl. Assn. v. 22 S. Madison, LLC,*
    170 A.D.3d 772 (2nd Dept. 2019)  10

*U.S. Bank National Association v. 22-33 Brookhaven, Inc.*,
    219 A.D.3d 657 (2nd Dept. 2023)  18

*U.S. Bank, N.A. v. Ahmed*,
    174 A.D.3d 661 (2nd Dept. 2019)  18

*U.S. Bank N.A. v. Chrismas-Beck*,
    219 A.D.3d 534 (2nd Dept. 2023)  12, 13

*U.S. Bank National Association v. Nelson*,
    169 A.D.3d 110 (2nd Dept. 2019)  3

*U.S. Bank Trust, N.A. v. Sadique*,
    178 A.D.3d 984 (2nd Dept. 2019)  19

*Wells Fargo Bank, N.A. v. Cohen*,
    80 A.D.3d 753 (2nd Dept. 2011)  5, 7

*Wells Fargo Bank, National Association v. Islam*,
    193 A.D.3d 1016 (2nd Dept. 2021)  7

*Wells Fargo Bank, N.A. v. Rodriguez*,
    210 A.D.3d 728 (2nd Dept. 2022)  15

*Wells Fargo Bank, N.A. v. Smith*,
    218 A.D.3d 832 (2nd Dept. 2023)  12

*Zinker v. Makler*, 298 A.D.2d 516 (2nd Dept. 2002)  5

## PRELIMINARY STATEMENT

Defendant Stuyvesant Construction Corp. ("Defendant") submits this post-trial memorandum in opposition to Plaintiff FTS Capital, LLC ("Plaintiff")'s post-trial brief ("Brief"). On March 8, 2024, Plaintiff's motion for summary judgment was denied due to, *inter alia,* a temporal gap in the evidence as to the default, *to wit*, from 2012 to 2019. Hence, the purpose of the trial on December 3, 2024 was to permit Plaintiff a final opportunity to meet its burden of proving the elements of its mortgage foreclosure claim under NY RPAPL Art. 13, including the alleged default on January 1, 2014 and compliance with NY RPAPL §§ 1303 and 1304, through admissible evidence. As noted in Defendant's Post Trial Brief, Plaintiff failed to meet this burden through admissible evidence in documentary form or competent testimony as to a January 1, 2014 default or how much is allegedly due and owing under the Note and Mortgage. Plaintiff thereby failed to make its showing of the elements of a claim for mortgage foreclosure under NY RPAPL Art. 13 by a preponderance of the evidence and thus warranting judgment in favor of Defendant pursuant to FRCP 52(a).

The Plaintiff's Post-Trial Brief ("Brief") does not remedy the Plaintiff's evidentiary shortcomings. At trial, Plaintiff failed to supply a witness who could, in fact, competently testify to either the January 1, 2014 default or the sums alleged to be due and owing. Yonel Devico ("Devico") lacked competency to testify as to the January 1, 2014 default under FRE § 601 and § 602 as he testified did not own the Note and Mortgage until, at the earliest, 2017. Benjamin Verdooren ("Verdooren") lacked personal knowledge of this loan. FRE § 602. The LIR, which was not admitted into evidence for its truth (**Exhibit 3**), and the PHH Records (**Exhibit 5**) facially differ on the date of default. Neither document stated the sum Devico approximated to be the unpaid principal balance at trial. Ultimately, the Brief does not address with specificity these substantive and evidentiary problems in Plaintiff's case in chief.

Rather, the Plaintiff's Brief obfuscates these issues. While conclusorily claiming that the Plaintiff met its burden by a preponderance of the evidence, the Brief fails to identify a *specific* date of default it alleged it proved at trial or a specific sum it has proved, or by what specific evidence it has done so. The preponderance of the evidence standard *ipso facto* requires actual evidence and Plaintiff has submitted none to this Court proving either the January 1, 2014 default or the sums alleged to be due and owing. Accordingly, Defendant is entitled to Judgment pursuant to FRCP 52(a).

Finally, the Plaintiff bore the burden at trial of establishing its compliance with NY RPAPL § 1303 and NY RPAPL § 1304, as Defendant raised these defenses in its answer. At trial, Plaintiff adduced no evidence of compliance or the inapplicability of NY RPAPL § 1303 or NY RPAPL § 1304. Nor did the Plaintiff refute Verdooren's testimony that the charge-off waived the principal and interest due on the Note and Mortgage. Accordingly, Judgment is also warranted in favor of Defendant pursuant to FRCP 52(a) on those grounds as well.

**POINT I:**     **THE PLAINTIFF FAILED TO ESTABLISH ITS CASE IN CHIEF BY A PREPONDERANCE OF THE EVIDENCE.**

"A facially adequate cause of action to foreclose a mortgage requires allegations regarding the existence of the mortgage, the unpaid note, and the defendant's default thereunder, which, if subsequently proven, will establish a prima facie case for relief." *U.S. Bank National Association v. Nelson*, 169 A.D.3d 110, 113 (2nd Dept. 2019) (citing *see IndyMac Venture, LLC v. Amus*, 164 A.D.3d 883, 884 (2nd Dept. 2018); *JPMorgan Chase Bank NA v. Wenegieme*, 162 A.D.3d 876, 877 (2nd Dept. 2018); *A/SL DFV, LLC v. C.A.R.S. Constr., LLC*, 161 A.D.3d 921, 922 (2nd Dept. 2018)). At this trial, the "unpaid note" and the "defendant's default thereunder", i.e. the principal balance and January 1, 2014 default, were at issue.

Plaintiff was required to prove these elements by a preponderance of the evidence. "To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true" based upon the admitted evidence. *Fischl v. Armitage*, 128 F.3d 50, 55 (2nd Cir. 1997). Inadmissible evidence is not considered. And evidence that has been limited in its admission, such as **Exhibit 3**, may only be considered for that limited purpose. FRE § 105.

At trial, Plaintiff failed to prove the amount of the unpaid principal balance of the Note on December 30, 2019 or the fact of a default on January 1, 2014 and thus failed to prove the elements of a mortgage foreclosure claim under New York law. Defendant is thus entitled to a Judgment dismissing this action pursuant to FRCP 52(a).

### 1. Plaintiff's Brief Does Not Explain How It Proved a Default on January 1, 2014 at Trial.

In reviewing the Plaintiff's Post Trial Brief ("Brief"), Defendant is perplexed as to how, exactly, Plaintiff claims that it has "proven" a default at all – a necessary element to a mortgage foreclosure claim. The Brief is opaque on this point and it is difficult to ascertain (i) what default Plaintiff claims to have proven, (ii) what admitted evidence supports that specific default, and (iii) how the Plaintiff established the January 1, 2014 default it pled in the Complaint. ECF Dkt. No. 1 ¶ 13.

According to the Brief, "Plaintiff…met its burden by the preponderance of the evidence that the subject loan was in default at the time the action was commenced and remains in default." Brief, p. 3. This statement is conclusory and lacking in factual detail.

To prove "that the subject loan was in default at the time the action was commenced," Plaintiff avers that "[t]hrough the testimony of Benjamin Verdooren, Plaintiff shows the uncured default on the loan." Brief, p. 4. Specifically, "Mr. Verdooren testified that the loan was in default and the last payment received on the loan was October 9, 2008…" *Id.* To be clear, Mr. Verdooren's testimony was that (i) there was a default on September 1, 2008 and (ii) the last payment occurred on October 9, 2008.

Although obscured by Plaintiff's Brief, the claim that "Mr. Verdooren testified that the loan was in default and the last payment received on the loan was October 9, 2008…" are, in fact, two different facts. *Id.* Plaintiff is not, in fact, claiming that the default here was October 9, 2008[1]. The most clarity Plaintiff actually provides in the Brief is "2008." *See, e.g.* Brief, p. 10.

_____

[1] As reflected in the Note, each monthly payment is or would be due on the first day of each month, not on the ninth. **Exhibit 1** ¶ 3. October 9, 2008 merely reflects the specific last date of payment reflected in the LIR and the PHH Records. **Exhibit 3; Exhibit 5;** Verdooren Tr. P. 46 LL 16-17. October 9, 2008, as a date, is thus utterly irrelevant to this matter.

The Brief lacks specificity as to the exact date of default (i.e. month, day, and year) purportedly proven by Plaintiff at trial.

The default Mr. Verdooren testified to, based on PHH's Records, was September 1, 2008. *See, e.g.* Verdooren Tr, p. 46 LL 15-16; **Exhibit 5,** PHH 0001, PHH 0016.

September 1, 2008 does not appear on the LIR. **Exhibit 3,** WB000004. The LIR reflects a "Next Pymt Date" of November 9, 2008[2]. **Exhibit 3**, WB000004. To put it simply, the LIR and PHH Records facially conflict as to the date of default. At trial, Plaintiff adduced no evidence or testimony to explain the discrepancy and, now, in its Brief, does not address this discrepancy.

The most charitable explanation is that Plaintiff is not aware of this discrepancy, since the Brief claims that, "Devico also testified that the Servicing Tape (**Exhibit 3**) reflects the same date of default as the PHH records." Brief, p. 4. This is also not correct.

Devico's actual testimony was that the date of last payment, October 9, 2008, was consistent between the LIR and PHH records. Trial Tr. P. 51 LL 15-18, 23-25. Devico did not testify that the LIR and PHH records have the same date of default and, in fact, they do not. **Exhibit 3**, WB000004; **Exhibit 5,** PHH 0001, PHH 0016. Devico never actually testified to a specific date of default, competently or otherwise. Trial Tr.

The specific date of default matters because "[W]ith respect to a mortgage payable in installments, there are 'separate causes of action for each installment accrued, and the Statute of Limitations [begins] to run, on the date each installment [becomes] due." *Wells Fargo Bank, N.A. v. Cohen*, 80 A.D.3d 753, 754 (2nd Dept. 2011) (*citing Loicano v. Goldberg*, 240 A.D.2d 476, 477 (2nd Dept. 1997) (quoting *Pagano v. Smith*, 201 A.D.2d 632, 633 (2nd Dept. 1994); *see Lavin v. Elmakiss*, 302 A.D.2d 638, 639 (3rd Dept. 2003); *Zinker v. Makler*, 298 A.D.2d 516 (2nd Dept.

---

[2] As noted in FN1, this loan cannot be due for November 9, 2008.

2002)).  Simply put, each installment constitutes a separate claim for mortgage foreclosure, until the loan is accelerated.

September 1, 2008, the date Mr. Verdooren alleged was a default, is a facially time barred default under NY CPLR § 213(4) as that date is more than six years prior to the commencement of this action on December 30, 2019.  ECF Dkt. No. 1.  Said default is thus barred by the Statute of Limitations, raised as a defense under Defendant's Thirteenth Affirmative Defense, and unenforceable.  ECF Dkt. No. 10 ¶ 29.  This is undisputed.  Hence, if this is the date that Plaintiff "proved," then dismissal must eventuate because Plaintiff did not establish a valid and enforceable default.

Plaintiff argues that this default "continued."  Brief, p. 5, 10.  But no evidence was adduced that this default "continued" through the date of default alleged in the Complaint, *to wit*, January 1, 2014.  ECF Dkt. No. 1 ¶ 13.  As is undisputed, the PHH records only go through 2012.  Brief p. 10.  Devico, by his own admission, lacks knowledge of the period from 2012 through, at the earliest, 2017.  FRE § 601, 602; Trial Tr. P. 12 L 1; *cf.* **Exhibit B**, Response Nos. 2, 4 (admitting Windward Bora, LLC was not formed until August 8, 2017 and that "Plaintiff came into physical possession of the Note and Mortgage on September 20, 2019").  And, as established at trial, the "proof" of this continuation was merely Devico's assumption, which he lacked competence to testify to.  Trial Tr. 94-95; FRE § 601, 602.  In sum, there was no evidence at trial that this loan was in default for January 1, 2014 and, in Plaintiff's Brief, none is asserted.  Plaintiff has thus failed to establish one of the elements of a claim of mortgage foreclosure, requiring Judgment for Defendant under FRCP 52(a).

Finally, Plaintiff's claims to having "advanced the due date" do not cure the proof deficit.  Brief, pp. 5, 11.  The term "advancing the due date" refers to the practice of selecting a specific

installment default date, usually later than the date of default set forth in the plaintiff's records. *See, e.g. Wells Fargo Bank, National Association v. Islam*, 193 A.D.3d 1016 (2nd Dept. 2021) (referencing the practice in factual background/dicta without ratifying the acceptance of such practice). The rule, however, remains that each installment constitutes its own separate claim. *Cohen*, 80 A.D.3d at 754.

"Advancing the due date" does not obviate proof requirements. Because each installment payment default is a *different*, *separate* claim, proof of one default cannot be proof of another. *See, e.g. Deutsche Bank National Trust Company v. Saavedra*, 228 A.D.3d 828, 830 (2nd Dept. 2024) ("[t]he plaintiff failed to establish, prima facie, the defendant's default in making payment on the mortgage debt. In support of its motion, the plaintiff submitted an affidavit of an employee of its loan servicer, who averred that he reviewed certain business records maintained by the loan servicer and that the defendant defaulted in making a payment on the mortgage debt on October 1, 2013, and continuing thereafter. However, the affiant failed to submit any business record substantiating the alleged default on October 1, 2013, and instead submitted a loan payment history reflecting account transactions occurring on or after October 4, 2013."). Stated simply, the Plaintiff is obligated to prove the default they claimed, *to wit*, January 1, 2014. While there are numerous possible paths to doing so, simply assuming that the default continued is not one of those paths. Trial Tr. 94-95. Or, as this Court in *Toiny v. Lindsay* put it, "the absence of documentation cannot be the basis to conclude that other payments were not made or that payments ceased on a certain date." 368 F.Supp.3d 453, 458 (EDNY 2019) (Matsumoto, J.).

*Lindsay* is particularly on point on this issue, where this Court refused to grant a judgment of foreclosure and sale based on proof deficiencies, such as the plaintiff's assumptions, even

though the defendant defaulted. In essence, the plaintiff[3] could not explain "how it arrived at the $113,976.01 figure" and why it had attempted to reclassify payments from principal to interest to arrive at a $150,000.00 figure. *Id.* "Toiny concludes from [a 2018 letter from Popular Bank and attached schedule] that Lindsay made no payments after July 1, 2009. This is a dubious conclusion." *Id.* at 457. This Court noted, however, that "the Popular Letter itself, dated June 5, 2018, does not state that Lindsay stopped making payments on July 1, 2009." *Id.* at 457-458. This Court noted, as referenced above, that, due to the language of Popular's letter, "the absence of documentation cannot be the basis to conclude that other payments were not made or that payments ceased on a certain date." *Id.* at 458. Here, of course, the Plaintiff lacks even that minimal evidence.

Finally, Plaintiff appears to suggest this Court can infer a default from Devico's testimony that Windward Bora, LLC never received any payments on the loan. *Id.* at 10. Plaintiff's Complaint did not claim a default at any point in Devico's alleged ownership, however, but, rather, on January 1, 2014. ECF Dkt. No. 1 ¶ 13. As reflected in *Saavedra*, alleged proofs of a subsequent default cannot prove an alleged, earlier default under New York law. 228 A.D.3d at 830.

Plaintiff's Brief also fails to support its arguments by any relevant precedent from this Court or a New York State court. Plaintiff identifies no legal precedent by which a different installment payment default is established by a default on a particular installment payment and, as noted throughout, this particular argument is belied by *Saavedra*. Nor does Plaintiff identify any legal precedent for the premise that Devico's assumption that the default continued constitutes admissible evidence.

---

[3] Toiny LLC is owned or controlled by Devico. *See Toiny LLC v. Donato*, 2018 WL 5817538 (SDNY 2018) (affidavit of Yonel Devico in support of Toiny LLC).

It is clear that Plaintiff did not, in fact, prove a default and the Brief fails to explain how, exactly, Plaintiff has done so.  The default actually referenced by Mr. Verdooren, for example, as having been proven, is facially time barred.  The default alleged in the Complaint, January 1, 2014, remains unproven and the Brief clearly makes no effort to do so.  Indeed, the only reference to this date in the Brief occurs in the Brief's Conclusion.  Defendant is thus entitled to Judgment under FRCP 52(a).

### 2. Plaintiff's Brief Fails to Explain How It Proved the Principal Balance on December 30, 2019, the Date this Action Was Commenced.

Defendant is also perplexed as to how, exactly, Plaintiff claims that it has "proven" the principal balance.  Plaintiff refers to this twice in the Brief: once on page 5 and once on page 11. In both instances, Plaintiff cites to nothing more than Devico's testimony[4].

In chief, Plaintiff asserts, "Mr. Devico testified that based on the use of a mortgage amortization schedule and the advancing of the default date to comply with the NY statute of limitation laws, the loan is due for an unpaid principal balance of approximately $104,000, plus interest and fees and costs."  Brief, p. 5.  As is undisputed, Plaintiff did not offer into evidence the mortgage amortization schedule Devico claimed to have used.  Trial Tr.

Under well-settled New York law, "[e]vidence of the contents of business records is admissible only where the records themselves are introduced."  *See, e.g. Bank of New York Mellon v. Gordon*, 171 A.D.3d 197, 205-206 (2nd Dept. 2019) (citing 35 Carmody-Wait 2d § 194:94 [2019]; *see People v. Barnes*, 177 A.D.2d 989 (4th Dept. 1991); *see also People v. Olivero*, 27 Misc.3d 1218(A) (N.Y. Crim. Ct. 2010); *People v. Ross*, 12 Misc.3d 755, 764 (Kings Crim. Ct.

---

[4] There is no dispute that the sum Devico testified to, ""I believed that number was $104,000 and like a few hundreds" differs from the sums set forth in the LIR and PHH Records.  Trial Tr. p. 57 LL 18-19; **Exhibit 3; Exhibit 5**.

2006)).  "Without their introduction, a witness's testimony as to the contents of the records is inadmissible hearsay." *Id.* (citing 35 Carmody-Wait 2d § 194:94 (2019); *see U.S. Bank Natl. Assn. v. 22 S. Madison, LLC*, 170 A.D.3d 772, 774 (2nd Dept. 2019); *Barnes*, 177 A.D.2d at 989).

In *Bank of America, N.A. v. Gonzalez*, the Second Department held an affiant's testimony was inadmissible hearsay and lacked probative value "because the affiant did not produce any of the business records that she purportedly relied upon in making her calculations."  219 A.D.3d 433, 436 (2nd Dept. 2023) (citing *see generally Gordon*, 171 A.D.3d at 208-209)).

Here, Devico's testimony as to the alleged principal balance, an approximate sum of "$104,000 and like a few hundreds" was inadmissible hearsay, as a matter of well-settled New York law.  Trial Tr. p. 57 LL 18-19.

What this Court is left with is Devico's self-serving testimony and a copy of the Note.  This "proof" has repeatedly been held by this and other New York Federal Courts to be insufficient proof of the unpaid principal balance.  *See, e.g. Happy Homes, LLC v. Jenerette-Snead*, 2016 WL 6599826, at *5 (EDNY November 7, 2016) (affidavit from Yonel Devico; "In the context of a default judgment in a foreclosure action, several courts in the Eastern District of New York have required more than production of the initial mortgage and an affidavit stating the outstanding principal on a loan") (citing in support *see OneWest Bank, N.A. v. Vaval,* 2016 WL 3945342, at *3 (EDNY July 19, 2016); *CIT Bank, N.A. v. Paganos,* 2016 WL 3945343 at *2 (EDNY July 19, 2016); *Eastern Sav. Bank, FSB v. Whyte*, 2015 WL 790036, at *6 (EDNY February 24, 2015)); *Nationstar Mortgage LLC v. Atanas*, 285 F.Supp.3d 618 (WDNY 2018) ("several other decisions in this Circuit have 'required more than production of the initial mortgage and an affidavit stating the outstanding principal on a loan"); *OneWest Bank, N.A. v. Hawkins*, 2015 WL 5706945, at *8 (EDNY September 2, 2015); *see also Avail 1 LLC v. Lemme,* 2024 WL 4566273, at *4 (NDNY

October 24, 2024) (in a particularly on point quote: "Plaintiff does not supply a copy of Decedent's payment history to support the unpaid principal balance. This deficiency is especially critical in light of the multiple numbers presented throughout Plaintiff's submissions to the Court, as discussed in Section III(C). The unpaid principal amount listed in Mr. Fratangelo's affidavit is the same as the amount listed in the August 18, 2023 "Mortgage Due & Payable Notification," but there is no documentation to indicate how this number was calculated"). The rationale is that "without providing substantiation for the unpaid principal balance, the Court cannot accurately calculate the total interest owed." *Atanas*, 285 F.Supp.3d at 627. Here, the approximate sum of "$104,000 and like a few hundreds" is Devico's hearsay approximation of the unpaid principal balance, and not a reasonably certain sum. Trial Tr. p. 57 LL 18-19.

Accordingly, the Plaintiff has failed to prove the unpaid principal balance with reasonable certainty and, thus, Judgment in favor of Defendant is warranted under FRCP 52(a).

**POINT II:   THE EVIDENCE AND TESTIMONY ADDUCED AT TRIAL DOES NOT ESTABLISH EITHER A DEFAULT ON JANUARY 1, 2014 OR THE SUMS ALLEGEDLY DUE AND OWING.**

While Point I addresses *Plaintiff's* arguments vis-à-vis the elements, the purpose of this section is to discuss the evidence Plaintiff asserts evidences its claims. In Plaintiff's Brief, Plaintiff relies on, *inter alia*, the testimony of Verdooren, the PHH Records, the LIR, and the trial testimony of Devico. Plaintiff fails to address the limitations on the use of this evidence in its Brief.

First, Plaintiff explicitly relies on the testimony of Verdooren to establish a default. Brief, pp. 5, 10. However, Verdooren lacked personal knowledge of the underlying loan, by his own admission. *See, e.g.* Verdooren Tr. p. 57 LL 4-21 (admitting no personal knowledge of the loan or the transactions in the PHH records); FRE §§ 601, 602. Under New York law, Verdooren's

testimony is inadmissible hearsay unless supported by PHH's records, *i.e.* **Exhibit 5.** *Gordon*, 171 A.D.3d at 205 ("It is the business record itself, not the foundational affidavit, that serves as proof of the matter asserted"); *see, e.g. MTGLQ Investors, L.P. v. Daleo*, 228 A.D.3d 929, 932 (2nd Dept. 2024).

As a matter of well settled New York law, "An affiant's assertion regarding the defendant's default, without the business records upon which he or she relied in making such an assertion, constitutes inadmissible hearsay." *Daleo,* 228 A.D.3d at 932 (citing *U.S. Bank N.A. v. Chrismas-Beck*, 219 A.D.3d 534, 536 (2nd Dept. 2023); *see Bank of N.Y. Mellon v. Giammona*, 219 A.D.3d 436, 439 (2nd Dept. 2023); *Wells Fargo Bank, N.A. v. Smith*, 218 A.D.3d 832, 834-835 (2nd Dept. 2023); *Gordon*, 171 A.D.3d at 205-206).

Insofar as relevant here, an important limitation on Verdooren's testimony is that the PHH Records do not go past February 20, 2012. Brief, p. 4 ("The records reflect that the loan remained in default through GMAC's servicing which ended in 2012"); Verdooren Tr. p. 40 L 25, p. 41 LL 2-4; p. 55 LL 17-23 (admitting the records do not go past 2012), p. 58 LL 6-25, p. 59 LL 2-5. Hence, the factual limitation on the PHH Records and Verdooren testimony is that neither extends past February 20, 2012, when GMAC servicing released the loan. Brief, p. 4. As the Complaint alleges a January 1, 2014 default, both the PHH Records and Verdooren testimony are functionally irrelevant, since they do not prove and do not tend to prove a default on January 1, 2014. Nor, for the same reason, can they prove the unpaid principal balance on December 30, 2019, the date of commencement. Verdooren testified that the PHH Records cannot establish a January 1, 2014 default. Verdooren Tr. p. 55 LL -17-23.

Next, the Court admitted the LIR (**Exhibit 3**) for the limited purpose of receipt, and not for its truth. Hence, no portion of the LIR constitutes admissible evidence as to its contents. Plaintiff does not address how this limitation affects the utilization of this evidence at trial. Brief, p. 4.

The failure to admit the LIR for its truth limits the scope of Devico's competence to those facts that he personally witnessed or observed. FRE § 601, 602. That is because "[i]t is the business record itself that serves as the proof of the matter asserted and 'not the foundational affidavit.'" *Daleo*, 228 A.D.3d at 932 (citing *Chrismas-Beck*, 219 A.D.3d at 536; *see Gordon*, 171 A.D.3d at 205). In essence, Devico's testimony is only admissible to the extent it addresses matter he personally knows since no substantive business records of Windward Bora, LLC were admitted.

Devico's lengthy testimony at trial was, upon further review of the transcript and exhibits, largely irrelevant to the issues in this action and did not evidence[5] any personal knowledge. For example, Devico indisputably lacked personal knowledge of the alleged January 1, 2014 default, as he claimed to acquire the Note and Mortgage in 2017. Brief, p. 11; FRE §§ 601, 602; Trial Tr. p. 12 LL 1. But, upon review of the transcript, Devico did not actually testify to a specific date of default. Trial Tr. Nor did Devico testify to a specific sum as being the unpaid principal balance. Trial Tr. p. 57 LL 18-19 ("I believe that number was $104,000 and like a few hundreds). Devico's testimony on the unpaid principal balance were qualified ("I believe") and inspecific. *Id.* Even in explaining this figure, Devico referred to a document that was unproduced: an "amortization schedule." *Id.* at p. 57 LL 20-23. The absence of the amortization schedule from the evidentiary record renders Devico's testimony as to the "$104,000 and like a few hundreds," already qualified by his "I believe", to be inadmissible hearsay as a matter of substantive New York law. *Daleo*, 228 A.D.3d at 932.

---

[5] Devico did not actually assert any personal knowledge other than of Windward Bora's business records keeping practices. Trial Tr. p. 8 LL 23-25, p. 11 LL 13-15.

Finally, Defendant notes that some of Devico's testimony, at least the part that was verifiable against documentary evidence, was not credible. *Cf.* Brief, p. 9 ("Mr. Devico provided credible testimony"). In the Brief, Plaintiff does not explain or address why this Court should consider Devico's testimony to be credible, other than conclusorily stating that the testimony was credible. *Id.* Ultimately, the Court will have to judge the credibility of Devico.

With respect to credibility, Devico was clearly evasive in his responses during cross-examination. Trial Tr. p. 62, *et seq.*; *First Horizon Bank v. Moriarty-Gentile*, 2013 WL 635243, *3 (EDNY February 20, 2013) (testimony that was "evasive, rambling, and not credible"). Insofar as relevant, cross-examination centered on when Windward Bora, LLC acquired the Note and Mortgage, a fact going to standing and Devico's temporal competence. FRE §§ 601, 602. As the Court is aware, Windward Bora, LLC never provided any documentary evidence to support any specific date as to when it acquired the Note and Mortgage during discovery. This fact was thus peculiarly within Windward Bora, LLC's knowledge and Devico's, as its principal. Trial Tr. P. 11 LL 10-12. Hence, the existence of multiple conflicting dates as to <u>when</u> Windward Bora, LLC acquired the Note and Mortgage is all the more incredible, as *all* of these conflicting dates originate from Devico and his various sworn prior statements.

Specifically, during Devico's direct testimony, he asserted, for the first time in this action, that Windward Bora, LLC had acquired the Note and Mortgage in "2017,"[6] a date inconsistent with his prior verified Amended Interrogatory Responses and an affidavit in a different action. *Compare* Trial Tr. p. 12 LL 1 *with* **Exhibit B**, Response No. 4 (asserting possession of the Note and Mortgage on September 20, 2019), Trial Tr. p. 93 LL 10-12. Although given the opportunity

---

[6] Windward Bora, LLC was not formed until August 8, 2017. **Exhibit B**, Response No. 2.

to explain this change, Devico reiterated that 2017 was correct[7] and provided no explanation for his[8] inconsistent prior statements and trial testimony, despite opportunity.  Tr. p. 12 LL 18-19; p. 87 LL 12-14; p. 91 LL 4-11 (stating that his prior statement about having the loan in 2015 may be a scrivener error); p. 94 LL 15-23 (denying knowledge of the statement about having the loan in 2015).  The Court is thus left with three different sworn dates, July 27, 2015, "2017," and September 20, 2019 asserted by Devico at different times.  ECF Dkt. No. 10 ¶ 6; Trial Tr. 12 LL 1; **Exhibit B**, Response No. 4.  A witness who provides contradictory testimony at trial to a prior sworn statement(s) is definitionally not credible, especially when no explanation is provided by the witness as to the recantation.

It seems most likely that Devico identified 2017 as the date of acquisition to avoid the consequences of **Exhibit F**[9] and **Exhibit G**[10], which disclaim representations by predecessors to Windward Bora, LLC, specifically Crosby Capital LLC and RCS Recovery Services, LLC.  **Exhibit F** ¶ 3(c), **Exhibit G** ¶ 2.3; Trial Tr. 76, LL 1-7 (Plaintiff's counsel claiming, prior to Devico's testimony, that this may not be the same loan at sidebar, "We don't know, he can't verify it's the same owner").

**Exhibit F** and **Exhibit G** are Plaintiff's redacted documents, filed by Hasbani & Light, P.C., in *Amos Financial LLC v. FDIC as Receiver for AmTrust Bank*, bearing Index No.: 500345/2016, Kings County Supreme Court.  **Exhibit F** and **Exhibit G** were not produced by Plaintiff during this litigation, even though specifically demanded and clearly in Plaintiff's

---

[7] It is respectfully submitted that there is no way to reconcile Devico's Amended Interrogatory Responses and Objections with his trial testimony as mere "inconsistency."

[8] The Amended Interrogatory Responses and Objections are personally verified by Devico.  **Exhibit B**.

[9] This loan sale agreement was filed by Plaintiff's counsel in a different action, after the close of discovery, and was never provided in discovery here, despite timely demand for loan sale agreements.  **Exhibit F**.

[10] This loan sale agreement was filed by Plaintiff's counsel in a different action, after the close of discovery, and was never provided in discovery here, despite timely demand for loan sale agreements.  **Exhibit G.**

possession. ECF Dkt. No. 17-1, Demand No. 23; ECF Dkt. No. 29; Trial Tr. p. 77 LL 13-25, p. 78 LL 1-6. Plaintiff claimed at trial, "I don't believe I would have this document" even though it was filed, redacted, by his counsel on May 12, 2022, after the close of discovery in this proceeding. Trial Tr. p. 72 LL 11-14, 19-20.

**Exhibit F** and **Exhibit G**, when connected to this loan, undermine multiple threads of Devico's narrative that Windward Bora, LLC directly acquired this loan from RCS Recovery Services, LLC in 2017. *See* Trial Tr. p. 12 LL 1-3, *cf.* Trial Tr. p. 71 LL 18-25, p. 72 LL 1-6. **Exhibit F** and **Exhibit G** establish that RCS Recovery Services, LLC sold this loan to Crosby Capital LLC and Crosby Capital LLC then sold it to Windward Bora, LLC in September 2019.

Moreover, the disclaimers of representations in **Exhibit F** and **Exhibit G** prohibit Devico from claiming that he "knew" information from oral communications with RCS Recovery Services, LLC. *See, e.g.* Trial Tr. P. 33 LL 5-23; 36 LL 11-12; *see also O'Hearn v. Bodyonics, Ltd.*, 22 F.Supp.2d 7 (EDNY 1998) ("The parol evidence rule bars proof of prior oral statements offered to refute the unambiguous terms of a written integrated contract") (citing *Marine Midland Bank-Southern v. Thurlow*, 53 N.Y.2d 381, 387 (1981)).

What ties **Exhibit F** to the underlying loan here is the loan number on page 5 of the exhibit. One of the "Seller's Loan Number[s]" is 146847. However, the address and note balance on that schedule are redacted. The "seller" on **Exhibit F** is RCS Recovery Services, LLC. Hence, RCS Recovery Services, LLC's loan number is 146847. Consistently, the LIR (**Exhibit 3**), which Devico testified he obtained from RCS Recovery Services, LLC, has a partially redacted[11] loan number of "6847." Trial Tr. p. 36 LL 6-20. Plaintiff further admitted that the LIR has "only two numbers that are redacted." Trial Tr. p. 77 LL 11-12. As discovered on December 10, 2024, the

---

[11] As admitted by Plaintiff's counsel, it was only produced in a redacted form to Defendant. Trial Tr. p. 77 LL 11-25, p. 78 LL 1-11.

original Note has an allonge from RCS Recovery Services, LLC to Windward Bora, LLC bearing loan number 000146847, confirming that Loan Number 146847 in **Exhibit F** actually relates to this loan. **Exhibit 8**, p. 9. This information was previously unknown as the allonge to the Note attached to the Complaint was deceptively[12] redacted as to its loan number. **Exhibit 1**, p. 9; *cf. Noval Williams Films v. Branca*, 2016 WL 7238960, *4 (SDNY December 14, 2016).

Again, the Plaintiff's efforts to question the authenticity and relevancy of **Exhibit F** were clearly intended to go to the weight of **Exhibit F**. *See, e.g.* Trial Tr. p. 75 LL 22-25 (Plaintiff's counsel asserting that, "I can't authenticate it whether it's his or somebody else's, somebody else signed it"), p. 76 LL 1-7 ("as with regards to relevance, there's nothing on there that shows that this specific loan was purchased with this agreement"). Essentially, Plaintiff attempted to assert that "We don't know – he can't verify it's the same owner" even though **Exhibit F** is signed by Devico, refers to the same loan number as this loan, and he is "potentially" the only person who be able to verify that **Exhibit F** refers to this loan (at trial and prior to the review of the original Note and its allonges). Trial Tr. p. 76 LL 6-7; p. 72 LL 12-25, p. 73 LL 1-4 ("It looks like it's electronic signature of mine"); p. 81 LL 6-10. Devico's testimony about **Exhibit F** was patently not credible.

With respect to **Exhibit G**, Devico's testimony lacked any credibility whatsoever. As reflected in **Exhibit G**, Devico signed as both parties to the document. Devico was "not sure" as to whether he had ever seen the document before, whether they were his signatures, and whether he affixed the signatures. Trial Tr. p. 83 LL 16-24; p. 85 LL 6-12. Devico indicated a lack of

---

[12] The redaction was not in black as customarily utilized, but, instead, in a "white" or "clear" redaction which made it appear as if no redaction had occurred. Defendant believes that a redacted document should be clearly identified as such.

knowledge as to a transaction, evidenced by a document filed by Plaintiff's counsel, on which he was, *inter alia*, both parties.

In summary, while it is for this Court to decide credibility, Devico's testimony was clearly self-serving and not credible.

## POINT III: PLAINTIFF'S BRIEF FAILS TO ADDRESS DEFENDANT'S SEVENTEENTH AFFIRMATIVE DEFENSE, WHICH IS PART OF PLAINTIFF'S BURDEN AT TRIAL.

In Defendant's Answer, ECF Dkt. No. 10, Defendant raised NY RPAPL § 1303 as one of its affirmative defenses. In Plaintiff's Brief, Plaintiff does not address this defense and, thus, has failed to establish their applicability or inapplicability, thus warranting dismissal.

NY RPAPL § 1303 requires, in any mortgage foreclosure action involving residential real property, notice to any mortgagor and "any tenant of a dwelling unit…" NY RPAPL § 1303(1). § 3 of NY RPAPL § 1303 describes the notice and that it be delivered with the Summons and Complaint. *Id.* at §§ (2),(3). In the Complaint, Plaintiff sought, as relief, "that an order be entered compelling that the tenants deliver possession of the premises to Plaintiff…" ECF Dkt. No. 1, p. 7.

Like NY RPAPL § 1304, NY RPAPL § 1303 requires "strict compliance." *U.S. Bank National Association v. 22-33 Brookhaven, Inc.*, 219 A.D.3d 657, 663 (2nd Dept. 2023). "Proper service of the notice required by RPAPL 1303 is a condition precedent to the commencement of a foreclosure action, and it is the plaintiff's burden to show compliance with that statute." *Id.* (citing *U.S. Bank, N.A. v. Ahmed*, 174 A.D.3d 661, 664 (2nd Dept. 2019). In other words, Plaintiff was required to show compliance with NY RPAPL § 1303 at trial. As is incontrovertible, Plaintiff made no showing of compliance with NY RPAPL § 1303 at trial.

Indeed, it cannot be disputed that no tenants were made parties to this action and none were served. ECF Dkt. Nos. 1, 8, 9. Hence, Plaintiff could not and did not comply with NY RPAPL § 1303 and thus failed to satisfy a condition precedent to commencement of this action. Moreover, no NY RPAPL § 1303 notice was admitted as evidence in this action by Plaintiff to show compliance with the typeface requirements.

In Plaintiff's Brief, Plaintiff does not address this defense or establish that it satisfied its burden. Hence, Defendant is entitled to Judgment pursuant to FRCP § 52(a) on this defense.

## POINT IV: PLAINTIFF FAILED TO MEET ITS BURDEN OF SHOWING COMPLIANCE WITH NY RPAPL § 1304 OR THE INAPPLICABILITY OF NY RPAPL § 1304.

In Complaint ¶ 14, the Plaintiff asserted that it complied with NY RPAPL § 1304. ECF Dkt. No. 1 ¶ 14. Defendant denied this allegation and asserted NY RPAPL § 1304 as a defense. ECF Dkt. No. 10 ¶¶ 2, 23. This was more than sufficient to raise this defense. *Lakeview Loan Servicing, LLC v. Swanson*, 231 A.D.3d 801, 805 (2nd Dept. 2024) (noting that NY RPAPL § 1304 can be raised any time during the action).

"Proper service of RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition. Alternatively, the plaintiff bears the burden of establishing, prima facie, that RPAPL 1304 is inapplicable, as the loan is not subject to the notice requirements set forth in RPAPL 1304." *Wells Fargo Bank, N.A. v. Rodriguez*, 210 A.D.3d 728, 730 (2nd Dept. 2022) (*citing JP Morgan Chase v. Twersky*, 202 A.D.3d 769, 770 (2nd Dept. 2022) (quoting *U.S. Bank Trust, N.A. v. Sadique*, 178 A.D.3d 984, 985 (2nd Dept. 2019)).

Here, Plaintiff presented no evidence at trial to satisfy its burden. It did not interpose any evidence as to its compliance with NY RPAPL § 1304, as it alleged in the Complaint. ECF Dkt. No. 1 ¶ 14. It did not interpose any evidence that this mortgage is not a "home loan" as defined by NY RPAPL § 1304. As this was Plaintiff's burden, Plaintiff failed to establish its compliance with NY RPAPL § 1304 and thus warranted dismissal on that basis.

**POINT V: PLAINTIFF FAILED TO ESTABLISH THAT THIS LOAN WAS NOT CHARGED-OFF IN MAY 2009, THAT THE SAME DID NOT CONSTITUTE A WAIVER, AND THAT, AS A RESULT, THIS LOAN IS NOW UNENFORCEABLE**

The final issue in Plaintiff's Brief is the "charge-off/waiver" issue. Brief, pp. 7-9. Plaintiff's argument is that even though **Exhibit 5** reflects that the balance due is $0.00, that was merely a charge off and some sums are and were due. Brief, p. 8-9.

Defendant agrees that, in the ordinary course of business, a charge-off would not necessarily mean that no sums are due and owing. Brief, p. 8. Usually, on a charge-off, the principal balance remains carried on the holder's books. *Id.*

Where this loan differs is that *this* charge-off on May 28, 2009 was a "full charge off." Verdooren Tr. p. 76 LL 20-24; **Exhibit 5**, PHH 0008-0009. A full charge off is a charge off of "everything on the loan that's due and owing plus fees, principal balance; everything." Verdooren Tr. p. 68 LL 7-11. In short, the loan was reduced to a $0.00 balance, including the principal balance. *Id.* at LL 12-14. The Pages were then notified of the charge-off and thus that the principal balance was $0.00. Verdooren Tr. p. 71 LL 18-20. On July 2, 2012, Ocwen notated that the account reflected a balance due of $0.00. **Exhibit 5**, PHH 0013 ("credit issue – send aud to bureaus for b1 reported acct serv rel on 02/20/12 was charge off on 05/28/09 (05-L-O) 0 bal"). Beyond this, Verdooren stated that, "I don't remember how GMAC exactly handled charge-offs back

then." Verdooren Tr., p. 32 LL 7-8. In sum, most charge-offs do not result in a full waiver of the entire balance and all accrued interest; this one did. *See, e.g. Leitner v. Client Services, LLC*, 2020 WL 3489482, *1, *et seq*. (EDNY June 26, 2020) (discussing various charge-off cases, which all note various iterations of "Current Balance", "Total Current Balance," "Total Amount Due", with a number, not a zero). GMAC, as per Mr. Verdooren's testimony, told the Pages and the world that nothing – zero – was due on this loan, not that there was a continuing obligation. Verdooren Tr. p. 68 LL 7-11.

There is an analogous principle in New York law regarding acceleration by letter of a mortgage. "New York courts have observed…that the acceleration of a mortgage debt may occur by means other than the commencement of a mortgage foreclosure action, such as through an unequivocal acceleration notice transmitted to the borrower." *Freedom Mortgage Corporation v. Engel*, 37 N.Y.3d 1, 25 (2021) (citations omitted) (rev'd by statute on other grounds, i.e. FAPA). Almost no letters actually qualify, however, because the language in the letter must be "an overt, unequivocal act" not referring to a future event. *Id.* at 27.

In *Student Loan Solutions, LLC v. Colon*, one such letter did. 231 A.D.3d 991, 993 (2nd Dept. 2024). In that debt collection letter, the borrowers were told that the debt collector "had been retained to collect the 'total amount' in connection with the defendants' delinquent debt, that the defendants owed the sum of $43,374.19, and that the defendants should send 'the balance in full' or contact [the debt collector] 'with respect to a full resolution.'" *Id.* at 993. "Contrary to the plaintiff's contention, this letter constituted an affirmative action clearly and unequivocally evidencing Bank of America's intention to accelerate the debt." *Id.*

Plaintiff's discussion of this issue is essentially a discussion of what generally happens. Brief, p. 8. Plaintiff does not address Verdooren's testimony that a full charge off *is* a full charge

off of *everything*, including principal, or that it was reported out to the Pages' credit reports as "zero" due.  Verdooren Tr. p. 68 LL 7-11.

Plaintiff does not even discuss *when* this charge off was revoked or the legal effect of waiver arising from this "full charge off."  *See, e.g. Cach LLC v. Fatima*, 32 Misc.3d 1231(A) (Nass. Dist. Ct. 2011) ("Absent clarification of the 'charge off,' the bank's ability to 'assign' the 'charged off' debt is open to question).

Plaintiff has not established, after trial, that any sums are actually due and owing on the Note and Mortgage.

## CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment should be granted in its entirety, this action dismissed as against Defendant, and for such other and further relief as may be just.

DATED:   April 18, 2025
          Washingtonville, NY

_____
Daniel H. Richland, Esq.
Richland & Falkowski, PLLC
5 Fairlawn Drive, Suite 204
Washingtonville, New York 10992
*Counsel for Defendant*