UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

FTS CAPITAL, LLC,

               Plaintiff,

      -against-

STUYVESANT CONSTRUCTION CORP.,

               Defendant.

-------------------------------------------------------X

**MEMORANDUM
AND ORDER**
19-CV-7275 (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On December 30, 2019, Windward Bora, LLC ("Windward Bora") initiated this foreclosure action against Defendants Stuyvesant Construction Corp. ("Stuyvesant") and HSBC Bank USA National Association ("HSBC"), seeking to foreclose a mortgage encumbering real property located at 195 East 39th Street, Brooklyn, New York, 11203. (Compl., ECF No. 1.) HSBC was later voluntarily dismissed from the case, FTS Capital LLC ("FTS Capital") was substituted in for Windward Bora as Plaintiff as a successor in interest, and on December 3, 2024, the Court held a one-day bench trial. (*See* Sept. 21, 2023 ECF Order; Feb. 28, 2024 ECF Order; Dec. 3, 2024 ECF Min. Entry; Trial Transcript, ECF No. 124-1 ("Trial Tr.").) Having reviewed the evidence, assessed the credibility of the witness who testified at trial, and applied the relevant law, the Court now makes the following findings of fact and reaches the following conclusions of law. For the reasons set forth below, the Court finds that Plaintiff has not established its case for foreclosure and enters judgment for Defendant.

**PROCEDURAL HISTORY AND TRIAL EVIDENCE**

**I. Procedural History**

As set forth above, Windward Bora initiated this action on December 30, 2019. In the complaint, Windward Bora alleged that the holders of the mortgage defaulted by failing to make a payment due on January 1, 2014 (the "Default Date"), and that the default continued through the date the complaint was filed. (Compl., ECF No. 1, ¶ 13.) After discovery and motion practice, on February 8, 2024, the Court held a hearing on the then-pending summary judgment motion. (*See* Joint Status Letter, ECF No. 61 (representing that fact discovery was completed with a limited number of outstanding items); Mot. Hr'g Tr., ECF No. 105; Feb. 8, 2024 ECF Min. Entry & Order.) At the summary judgment motion hearing, the parties agreed that FTS Capital is the successor in interest to Windward Bora because the loan was transferred to FTS Capital during the pendency of this case. (*See* Mot. Hr'g Tr., ECF No. 105, at 3:9–11, 13:11–14:19; Feb. 8, 2024 ECF Min. Entry & Order.) Accordingly, on February 22, 2024, the parties filed a stipulation to substitute Plaintiff, replacing Windward Bora with FTS Capital. (Stipulation, ECF No. 106.)[1]

On March 8, 2024, the Court denied Plaintiff's motion for summary judgment.[2] (Mem. & Order, ECF No. 108.) On December 3, 2024, the Court held a bench trial. (*See*

---

[1] On February 28, 2024, the Court directed newly added Plaintiff FTS Capital to file a corporate disclosure statement under Rule 7.1 of the Federal Rules of Civil Procedure, identifying the name and citizenship of the LLC members. (Feb. 28, 2024 ECF Order.) On March 6, 2024, Plaintiff filed its corporate disclosure statement, identifying two individuals as the members of FTS Capital and stating that they are citizens of Pennsylvania. (Rule 7.1 Statement, ECF No. 107.)

[2] Defendant Stuyvesant first moved for summary judgment on August 23, 2022, and Windward Bora opposed Defendant's motion and cross-moved for summary judgment. (*See* First Mot. for Summ. J., ECF No. 79; First Mot. for Summ. J., ECF No. 80.) The Honorable Dora L. Irizarry struck both motions. (*See* Mar. 23, 2023 ECF Min. Order & Mar. 23, 2023 Conf. Tr., ECF No. 91.) The case was later reassigned to the undersigned Magistrate Judge on consent of

Dec. 3, 2024 ECF Min. Entry & Order.) One week later, on December 10, 2024, the Court inspected the original note that is at issue in this case. (*See* Dec. 10, 2024 ECF Min. Entry.) On January 10, 2025, the parties filed their post-trial proposed findings of fact; after a series of extensions, responses were submitted on April 18, 2025. (*See* Pl.'s Proposed Findings of Fact ("Pl.'s Findings"), ECF No. 124; Def.'s Proposed Findings of Fact ("Def.'s Findings"), ECF No. 125; Pl.'s Response to Proposed Findings of Facts ("Pl.'s Response"), ECF No. 129; Def.'s Response to Proposed Findings of Facts ("Def.'s Response"), ECF No. 128.)

In the post-trial submissions, Plaintiff submits that it has established its entitlement to foreclosure, arguing that the trial evidence proved the existence of the underlying note and mortgage, and that the subject loan was in default. (*See* Pl.'s Findings, ECF No. 124, at ECF pp. 10–12.) Accordingly, Plaintiff requests a judgment of foreclosure and sale. (*Id.* at ECF p. 12.)

Defendant's proposed findings of fact indicate that Defendant has waived the argument that FTS Capital lacks standing to seek foreclosure in this case. (Def.'s Findings, ECF No. 125, at 1 n.1.) Defendant argues, however, that Plaintiff failed to produce evidence proving that the loan was in default on January 1, 2014, the date alleged in the complaint, and provided no evidence showing "that there were unpaid sums on the note." (Def.'s Findings, ECF No. 125, at 1, 6–12, 17–19.) Defendant also avers that Plaintiff failed to establish compliance with Sections 1303 and 1304 of the New York Real Property Actions and Proceedings Law ("RPAPL"), which were raised

---

the parties. (Consent, ECF No. 102; Sept. 21, 2023 ECF Order.) In the meantime, on August 21, 2023, the parties filed Plaintiff's second motion for summary judgment, on which the Court heard oral argument and issued a decision. (*See* Second Mot. for Summ. J., ECF No. 97; Mot. Hr'g Tr., ECF No. 105; Mem. & Order, ECF No. 108.)

as Defendant's seventeenth and tenth affirmative defenses, respectively. (*Id.* at 2, 5.) In addition, Defendant continues to press some of the affirmative defenses that it originally raised in its answer, including: that no debt was owed to Plaintiff on the loan (fifth affirmative defense); waiver (fourth affirmative defense); "[p]ayment, release, accord and/or satisfaction" (sixth affirmative defense); and laches and estoppel (fourteenth affirmative defense).[3] (*Id.* at 17–19.) Finally, Defendant argues that an exhibit that was offered at trial, but not admitted, should be admitted and considered. (*Id.* at 21–25.)

## II. Trial Evidence

"In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "It is within the province of the district court as the trier of fact to decide whose testimony should be credited." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012). The Court first provides an overview of the evidence presented at trial, then turns to its findings of fact and conclusions of law.

### A. Plaintiff's Case

At trial, Plaintiff introduced the testimony of two witnesses and numerous exhibits. The only witness who testified in person at trial was Yonel Devico ("Devico"), the sole member of Windward Bora, the original Plaintiff that initiated this foreclosure action. (*See generally* Trial Tr.; Compl., ECF No. 1.) Plaintiff also introduced the deposition testimony of Benjamin Verdooren, an employee of Ocwen Financial

---

[3] Given the ultimate conclusion that Plaintiff failed to establish its entitlement to foreclosure by a preponderance of the evidence, the Court need not and does not reach all of Defendant's affirmative defenses. But in the interest of completeness, the Court does address some of the underlying factual assertions pertaining to the affirmative defenses, including, for example, the argument that the loan balance was reduced to zero, which is not consistent with the deposition testimony of Benjamin Verdooren discussed *infra*.

Corporation ("Ocwen"), who testified regarding servicing records pertaining to the mortgage at issue that had been produced by PHH Mortgage Corporation ("PHH"), a wholly owned subsidiary of Ocwen. (Tr. of Dep. of Benjamin Verdooren ("Verdooren Dep."), Pl. Ex. 6, at 7:5–8:11 (explaining that PHH is the mortgage servicing company for Ocwen).)

As to documentary evidence, the Court admitted the following exhibits offered by Plaintiff: the underlying note (the "Note") for the property at 195 East 39th Street, Brooklyn, New York, 11203 (the "Property") (Pl. Ex. 1); a mortgage on the Property from 2006 (the "Mortgage") (Pl. Ex. 2); the deed for the Property (Pl. Ex. 4); documents received pursuant to a subpoena from PHH (Pl. Ex. 5); and the Woodward Bora LLC operating agreement (Pl. Ex. 7). In addition, the Court admitted one document into evidence for a limited purpose, as discussed in more detail below: a document that Devico described as a "servicing tape," which he testified that Windward Bora received when it purchased the underlying Note.[4] (Pl. Ex. 3; Trial Tr. at 34:20.)

1. *Documentary Evidence*

The Note showed that it was executed on July 25, 2006, by Karisma Page, in the amount of $110,000, and secured by the Mortgage encumbering the Property. (Pl. Ex. 1, at ECF p. 21, 23.[5]) There are four allonges to the Note. (*See id.* at ECF pp. 26–29.) The

---

[4] When asked by the Court what he meant by "servicing tape," Devico stated: "Loans are — the loans are serviced by a mortgage servicer or a company and the data of the loans are kept in an Excel spreadsheet or — or in — in a servicing software with all the details about the loans." (Trial Tr. at 34:25–35:3.)

[5] The version of the Note and Mortgage that were entered into evidence was the version originally included as Exhibit 1 to the complaint in this case. (*Compare* Pl. Ex. 1 *with* ECF No. 1-1, pp. 21–29; Pl. Ex. 2 *with* ECF No. 1-1, pp. 4–19.) For ease of reference, the Court refers to the ECF page numbers at the top of the exhibits because the documents do not otherwise contain page numbering.

final allonge indicates that the Note was transferred from RCS Recovery Services, LLC (referred to herein as "RCS Recovery Services" or "RCS") to Windward Bora, the original Plaintiff in this action; it is undated.[6] (*See id.* at ECF p. 29.) The Mortgage, which was signed by Karisma Page and Randy Page ("the Pages"), and was also in the amount of $110,000, shows that it was recorded on September 13, 2006, with the New York City Department of Finance. (Pl. Ex. 2, at ECF pp. 4–5.) The deed to the Property, which is a form quitclaim deed, shows that on September 11, 2017, Randy Page, on behalf of an entity called "Page Capital Property Management," transferred the Property to Defendant Stuyvesant Construction Corp. (Pl. Ex. 4.) The transfer was registered with the New York City Department of Finance on October 12, 2017, and a New York State Real Property Transfer Report shows that the sale price for the transfer was $20,000. (*See id.*)

Plaintiff's Exhibit 5, the records received from PHH, reflect activity related to the Mortgage between May 2007 and July 2013. (Pl. Ex. 5; *see also* Verdooren Dep., Pl. Ex. 6, at 13:13–15:14.) The PHH records have a service release date noted as of February 20, 2012, indicating that was the date the loan servicer ceased service on the loan. (*See* Pl. Ex. 5, at PHH 0013, PHH 0017; Trial Tr. at 64:10–65:1; Verdooren Dep., Pl. Ex. 6, at 40:25–41:4.) The final page of the PHH records shows that the last payment made on the loan was on October 9, 2008. (Pl. Ex. 5, at PHH 0017.) The PHH records also show that the balance due when the loan was service released was $108,801.24. (*Id.*)

---

[6] As noted above, the Court inspected the original Note on December 10, 2024. (*See* Dec. 10, 2024 ECF Min. Entry & Order.) The Note inspection confirmed that the Note had been transferred from Windward Bora to FTS. (Dec. 10, 2024 Conf. Tr., ECF No. 130, at 4:18–20.)

Plaintiff's Exhibit 3 was the sole exhibit introduced for a limited purpose. As noted above, Devico described the document as a "servicing tape" for the loan. Regarding the origin of the document, Devico testified as follows on direct examination:

> Q. And at any time was Windward Bora in possession of that document?
>
> A. Yes.
>
> Q. And where did Windward Bora obtain that document?
>
> A. It was obtained by the previous holder of the note.
>
> Q. And is this document ordinarily kept in Windward Bora's business records?
>
> A. Yes.
>
> Q. And since it was received from the prior note owner, was it incorporated into Windward Bora's business records?
>
> A. Yes.
>
> Q. And is it in the ordinary course of business that such a document be kept in Windward Bora's business records?
>
> A. Yes.

(Trial Tr. at 35:6–19.) After those questions, Plaintiff sought to introduce the document as a business record, in response to which Defendant asked to conduct *voir dire* regarding the exhibit. (*Id.* at 35:20–36:2.) During that *voir dire*, Devico testified as follows:

> Q. Mr. Devico, can you tell me, if you recall, who put in the entries on this document?
>
> A. It was the previous noteholder.
>
> Q. How do you know that?
>
> A. Because they told me.
>
> Q. So you are relying upon a representation from RCS?
>
> A. Yes.
>
> Q. Okay. How do you know those entries were made contemporaneously?
>
> A. I don't understand the question.
>
> Q. How do you know those entries on this form were made at the time the document was prepared?

A. I don't know.

Q. Do you know who made the document?

A. RCS.

Q. Are you sure of that?

A. This is what I was told.

Q. Okay. What did you do to verify the information on this record before the commencement of this action?

A. We verified with the previous noteholder if the note — if any payments were received on this note.

Q. Who specifically at the prior noteholder?

A. Seth Miller.

Q. Is Mr. Miller going to be testifying about these conversations today, to your knowledge?

A. I'm not sure.

. . .

Q. Do you know when RCS Recovery Services obtained the note mortgage?

A. I don't have the exact date.

Q. Do you know the date at all?

A. No.

Q. Okay. Did you previously testify at your deposition that you did not know who created the document?

A. I don't remember exactly that, but I can tell you that in the meantime, I can — like I refreshed my memory and I can tell you that RCS created this document.

Q. So it is your testimony that RCS created this document?

A. Yes.

(*Id.* at 36:6–38:1.) After further questioning and argument out of the hearing of the witness, the Court asked counsel for Plaintiff, Mr. Hasbani, for argument as to why the record should be admitted into evidence. This discussion is set forth as follows, in pertinent part:

THE COURT:     Mr. Hasbani, this has of course been the basis of discussion for a long time now.[7] What is your argument as to why this document comes into evidence, sir?

MR. HASBANI:  It's a record received from the prior servicer as he testified to. It's been incorporated into Windward Bora's business records. It's kept in the ordinary course of business. And it's standard procedure to have such a business record. Now, whether that business record, later it's argued that the business record is insufficient to show our claim, that is a different story, but the document itself is a business record.

THE COURT:     So my question is this: If you are seeking to admit it as a business record, how have you established that the record was made at or near the time by and from information transmitted by someone with knowledge?

MR. HASBANI:  Through the — I mean, at this time, since it's not their business record, it's been incorporated into their own.

THE COURT:     But have you established any evidence as to when this record was generated and by whom and the basis for that person's knowledge?

MR. HASBANI:  I was going to establish that it was originated by RCS at the time that it was transferred to — to Windward Bora.

. . .

MR. HASBANI:  Your Honor, as it is industry standard, the loan is always continuously being moved from one to the other, one cannot say who inputted records years prior to them and that's why there is a business incorporation rule.

THE COURT:     Where is the business incorporation rule in the rules of evidence?

MR. HASBANI:  That's based on common law, I believe.

. . .

THE COURT:     . . . If you have authority on that point, by all means, you can bring it to my attention, but I think there's two different issues here. One is whether or not this is a document that he received. I think he's qualified to testify that he received the document and I think he's established that he received the document and I think that it's perfectly fine for me to admit the document as a record that he received. But that is different than admitting it for the truth of the matter asserted. So the record is admitted for that limited purpose as of now subject to connection. If you are able to establish that there's some basis for me to conclude that a hearsay issue has been overcome, the document could be

---

[7] The origin and admissibility of this document was also addressed at the summary judgment stage and was discussed both in the Court's summary judgment opinion and at oral argument on the summary judgment motion. (*See* Mem. & Order, ECF No. 108, at 9–11 & 11 n.3; Mot. Hr'g Tr., ECF No. 105, at 23:7–27:22.)

offered for the truth. But as of now, with all respect, based on the current evidence and the law as I understand it, I don't think you have established an exception to the hearsay rule as to this document. It doesn't mean it doesn't come in as a document that they received, but whether or not it comes in for the truth of the matter asserted, which is the outstanding indebtedness, is a different issue.

(*Id.* at 40:10–43:24.)

Following the sidebar argument, the Court admitted the document as follows:[8]

THE COURT:    Subject to the conversation at the sidebar, the document that has been marked as Plaintiff's Exhibit 3 is admitted for the limited purpose of the fact that Mr. Devico received it from the prior servicer, subject to connection as to whether or not the hearsay issue [defense counsel] has identified can be overcome.

(*Id.* at 45:1–6.)

2.  *Devico Testimony*

In addition to identifying the foregoing exhibits for admission into evidence, Devico testified regarding his role at Windward Bora, his familiarity with the Property and Windward Bora's purchase of the Note, that Windward Bora had physical possession of the Note prior to the commencement of this case in late 2019, and his determination to commence this lawsuit because of his understanding that the loan was in default. (*Id.* at 8:14–16, 11:16–12:3, 12:13–19, 30:24–31:3, 60:24–61:6.) He also testified

---

[8] Fed. R. Evid. 803(6), the business records exception to the hearsay rule, permits the introduction of:

A record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

that Defendant Stuyvesant was the holder of the deed for the Property. (*Id.* at 30:12–23.) He further explained that the Default Date of January 1, 2014, was alleged in this case because "New York state law for collecting on a debt is limited to six years."[9] (*Id.* at 57:2–7.)

Devico further testified that Windward Bora did not receive any documents that showed the loan was paid, and that, if no payments were made between 2008 and January 1, 2014, the Default Date alleged in the complaint in this case, the loan remained in default. (*Id.* at 57:10–12, 95:3–23; *see also* Compl., ECF No. 1, ¶ 13 (alleging January 1, 2014 as the Default Date).) On that point, Devico conceded during cross-examination that he was, essentially, assuming that the default continued from 2008 to January 1, 2014, based on the records he received from the prior servicer. (*See* Trial Tr. at 95:20–23 ("Q. So, Mr. Devico, you're assuming — if I'm correct, your testimony is that you're assuming the default continued, correct? A. Correct.").)

As to when Windward Bora took possession of the Note, Devico testified on direct examination that "[i]t was well before 2019, so I would say somewhere in 2017 or '18." (*Id.* at 12:18–19.) On cross-examination, Devico first testified that Windward Bora acquired the Note and Mortgage in 2017. (*Id.* at 87:14.) He was then confronted with an

---

[9] As Defendant acknowledges, arguments concerning whether Plaintiff has proven a default on January 1, 2014, specifically, are a "red herring" to some extent. (Def.'s Findings, ECF No. 125, at 13.) This is because although "[a]n action to foreclose a mortgage is subject to a six-year statute of limitations," where a mortgage is payable in installments, "separate causes of action accrue for each installment that is not paid, and the statute of limitations begins to run on the date each installment becomes due." *Wells Fargo Bank, N.A. v. Islam*, 142 N.Y.S.3d 819, 821 (App. Div. 2d Dep't 2021). Accordingly, the holder of a note can initiate a foreclosure in the event of default well more than six years after the initial default but may be precluded from collecting debt that accrued more than six years before. In this case, Plaintiff alleged default six years prior to commencing suit although the default on which Plaintiff relies to foreclose occurred in 2008. As discussed *infra*, however, Plaintiff has failed to establish an actionable default in this case because there is a temporal gap in the records offered at trial and no business records or competent testimony were introduced that establish a default after February 2012.

affidavit prepared in connection with a lawsuit in Florida and questioned about

whether he had previously stated under oath that Windward Bora took possession of

the Note in 2015, as follows, in pertinent part:[10]

> Q. Mr. Devico, have you ever asserted that you acquired the note and mortgage in this action, underlying this action on July 18, 2015?
>
> A. I'm not sure.
>
> Q. Would it refresh your recollection to review paragraph 4 of this document? Mr. Devico?
>
> A. What is the question?
>
> THE COURT:    The question is would it refresh your recollection to review paragraph 4.
>
> A. Yes.
>
> MR. HASBANI: Objection, Your Honor. Relevance.
>
> THE COURT:    He's refreshing recollection. He can answer the question whether his recollection is refreshed. Yes or no.
>
> THE WITNESS: Yes.
>
> Q. Okay. So have you ever stated that you acquired the note and mortgage on July 18, 2015?
>
> A. I don't remember.

(*Id.* at 92:18–93:12.) Further cross-examination as to when Windward Bora took

possession of the Note included the following:

> Q. Can you please read your response to the interrogatories into the record . . . ?
>
> A. "Plaintiff came into physical possession of the note and mortgage on September 20, 2019.["]
>
> Q. Okay. So you've testified here today that you came into possession of the note in 2017 and I asked you if you've ever stated that you came into possession of the note and mortgage in 2015, and you have a third statement here about 2019. Which of those is accurate? If you know.
>
> A. The note — we came into possession of the note before the commencement of this action on or about those days.

---

[10] The affidavit, which was signed by Devico in connection with a case filed in Miami Dade County involving Windward Bora and Victoria Zavelina of Defendant Stuyvesant regarding the Property at issue in this case, was marked as Defense Exhibit H and was only used for impeachment; it was not admitted into evidence. (*See* Trial Tr. at 87:15–18, 88:22–89:5, 90:14–91:3.)

Q. Which of those dates, sir?

A. It was 2017.

(*Id.* at 94:11–23.) The only other testimonial evidence offered by Plaintiff was the Verdooren deposition, which was admitted in its entirety.

3. *Verdooren Deposition*

Verdooren testified that he worked for a previous loan servicer on the Note. At the time of his deposition, he worked for Ocwen and he testified that PHH was a "wholly-owned subsidiary to Ocwen Financial." (Verdooren Dep., Pl. Ex. 6, at 7:8–9.) He further testified that he had been employed by Ocwen since February 2013, when Ocwen purchased GMAC LLC, where Verdooren had previously worked. (*Id.* at 7:16– 8:9.) The bulk of Verdooren's deposition testimony concerned the loan records PHH produced in this case pursuant to a subpoena, which were introduced into evidence at trial as Plaintiff's Exhibit 5. (*See generally id.*; Pl. Ex. 5.) Verdooren's testimony established that the PHH records show that GMAC serviced the loan from at least May 25, 2007, to February 20, 2012. (Verdooren Dep., Pl. Ex. 6, at 14:22–25 (noting that the records reflect an entry on May 25, 2007, that states "servicing date equals . . . September 25, 2006").) Verdooren also testified that the loan first went into default starting on June 5, 2008, but could not explain what the coding regarding the reason for the default meant. (*Id.* at 15:15–16:1; *see also* Pl. Ex. 5, at PHH 0002.) He explained that the last payment on the loan was reflected on PHH 0017, which brought the loan up to date for the payment that was due on August 1, 2008, and that GMAC received no other payments after that date. (Verdooren Dep., Pl. Ex. 6, at 52:9–23; *see also* Pl. Ex. 5, at PHH 0017 (reflecting a payment on October 9, 2008, which was credited to the payment due August 1, 2008).)

In addition, Verdooren testified that GMAC charged off the loan in May 2009, explaining that "GMAC decided that this loan, they couldn't recover anything from the borrower and the amount that was due and owing wasn't worth going after the borrower." (*Id.* at 31:20–23; *see also* Pl. Ex. 5, at PHH 0008 (indicating on May 28, 2009, in the account notes, "charge-off complete" (capitalization modified)).) Explaining what a charge-off is, Verdooren continued: "So on the books, they — they — they wrote it off, they considered it a loss. They didn't wipe out the debt, it wasn't taken away. It's just that the loan was written off the books." (Verdooren Dep., Pl. Ex. 6, at 31:23–32:2.)

Verdooren confirmed that the PHH records reflect that it was "service-released on February 20, 2012 in the amount of $108,801.24," but that although it was charged off, "it didn't zero-out the loan." (*Id.* at 45:13–14, 45:19.) Verdooren further testified that he did not know who serviced the loan after GMAC service released the loan. (*Id.* at 52:24–53:2.) He also testified that he did not know what happened with this loan after 2012 and had no knowledge of the balance of the loan as of January 1, 2014. (*See id.* at 56:11–57:17, 58:10–59:6.)

As to whether the records suggest that the amount of the balance was zero, Verdooren testified that the PHH records reflect a "refresh date" of October 7, 2020, which shows "the date this was run and pooled," referring to the records produced as PHH 0001 through 0017. (*See id.* at 45:20–46:5.) Verdooren further explained that the PHH records would show a principal balance ("Bal. Prin.") of zero at the top of the pertinent pages of the records because "it's pulling the data as of that date of October 7, 2020. Of course on that date there would be a zero balance, because this loan transferred out in 2012." (*Id.* at 47:22–25, 60:5–16 (explaining that "Bal. Prin." means principal balance on the PHH records); *see also* Pl. Ex. 5, at PHH 0001, PHH 0016–0017 (detailing

the underlying financial transactions on the loan when it was serviced by GMAC, from May 2007 through the service release on February 20, 2012).)

**B. Defendant's Case**

Defendant called no witnesses in its case but offered three exhibits that were admitted into evidence. First, the Court admitted, on consent of Plaintiff, Windward Bora's October 16, 2020 amended responses and objections to Defendant's first set of interrogatories, which were verified by Devico as member of Windward Bora. (Def. Ex. B.) As discussed above, these interrogatories, which were sworn to and verified by Devico under penalty of perjury, state that "Plaintiff came into physical possession of the Note and Mortgage on September 20, 2019." (Def. Ex. B, at 4.) Defendant also offered, as a public record, a mortgage note purchase and sale agreement reflecting a transaction on September 12, 2019, between RCS and Crosby Capital USA, LLC ("Crosby Capital"), which was signed by Yonel Devico as principal of Crosby Capital. (Def. Ex. F.) An attached mortgage note schedule includes a list of numbers identified as "Seller's Loan Number," which includes loan number 146847, but the associated property street address is redacted from the document. (*See* Def. Ex. F (including, as the second to last page, a document entitled "Mortgage Note Schedule").) The accompanying mortgage loan purchase agreement was admitted as Defense Exhibit G. (*See* Ex. List, ECF No. 122.) Finally, Defendant also offered into evidence a consent order concerning the loan servicing company Ocwen, which was entered into between Ocwen and the New York State Department of Financial Services, as a public record. (*See* Trial Tr. at 86:18–19, 110:7–114:5.) Although the Court did not admit the document into evidence at trial, Defendant was given leave to include any argument and authority for

its admission in the post-trial briefing. (*Id.* at 115:20–116:8; Dec. 3, 2024 ECF Min Entry.)[11]

**FINDINGS OF FACT**

The evidence offered at the trial adduced the following material facts.

1)  On July 25, 2006, Karisma Page executed the Note in the amount of $110,000, secured by the Mortgage encumbering the Property, which Mortgage was offered by Columbia Home Loans, LLC, doing business as Brokers Funding Services, Co. (Note, Pl. Ex. 1; Mortgage, Pl. Ex. 2.)

2)  On July 25, 2006, Karisma Page and Randy Page executed the Mortgage for the Property in the amount of $110,000, which was recorded on September 13, 2006, with the New York City Department of Finance. (Mortgage, Pl. Ex. 2.)

3)  The Mortgage was serviced by GMAC from at least 2007 through February 20, 2012, when GMAC service released the loan to another servicer. (*See* Pl. Ex. 5, at PHH 0016–0017; Verdooren Dep., Pl. Ex. 6, at 40:23–41:4, 45:13–14.)

4)  As of February 20, 2012, the date of the service release by GMAC, the balance on the Mortgage was $108,801.24. (Pl. Ex. 5, at PHH 0017.)

5)  The allonges to the Note indicate that it was first transferred from Columbia Home Loans, LLC, to Residential Funding Company, LLC. A second allonge shows a transfer from U.S. Bank National Association as trustee by Residential Funding Company LLC fka Residential Funding Corporation, its attorney in fact, to Residendtial [sic] Funding Company LLC fka Residendtial [sic] Funding Corporation. The third allonge shows a transfer from Residendtial [sic] Funding Company LLC fka

---

[11] Given the Court's conclusion that Plaintiff failed to meet their burden of proof to establish their case for foreclosure, the Court need not and does not reach the issue of the admissibility of the Ocwen consent order.

Residendtial [sic] Funding Corporation to RCS Recovery Services, LLC. The fourth allonge shows transfer of the "Note and Deed of Trust/Mortgage securing the same" from RCS Recovery Services, LLC to Windward Bora LLC. None of the allonges are dated. (Note, Pl. Ex. 1.)

6)  On September 11, 2017, Page Capital Property Management, Inc., an entity affiliated with the Pages, transferred the deed of the Property to Defendant Stuyvesant, for a sale price of $20,000. (Pl. Ex. 4; Trial Tr. at 30:12–16.)

7)  The previous holder of the note, RCS Recovery Services, provided Windward Bora a servicing tape, which was offered as Plaintiff's Exhibit 3. (Trial Tr. at 34:20, 35:9–10, 36:6–20; Pl. Ex. 3.)

8)  The servicing tape from RCS, which was admitted for a limited purpose due to the lack of foundation for the document as a business record, consists of two lines of data spread across five pages. (Pl. Ex. 3.) It indicates, *inter alia*, the Note amount, balance due, Note date, last paid date, and next payment due date. (*Id.*) It also indicates that the loan pertains to the Property, and that the account number ends with 6847. (*Id.*) While the servicing tape states that the last paid date was October 9, 2008, and that the balance due is $108,801.24, the servicing tape itself is undated and does not indicate whether the loan was in default as of January 1, 2014. (Pl. Ex. 3.)

9)  Although Plaintiff has not clearly established when Windward Bora took possession of the Note, Windward Bora held possession of the Note as of December 30, 2019, the date this case was initiated. (*See* discussion of Devico testimony *supra*; Pl. Ex. 1, at ECF p. 29 (allonge attached to the complaint).)

10)  As of December 30, 2019, Defendant Stuyvesant held the deed for the Property. (Trial Tr. at 30:8–23.)

11)  The trial record does not include any mortgage servicing records detailing the history of the loan between February 20, 2012, and December 30, 2019.

12)  No competent testimony or admissible evidence established the principal balance on the loan for any specific date after February 20, 2012, when the loan was service released from GMAC. (Pl. Ex. 5, at PHH 0017; *see* Verdooren Dep., Pl. Ex. 6, at 56:11–57:17, 58:10–59:6.)

*   *   *   *   *

Regarding the date that Windward Bora took possession of the Note and Devico's related testimony, the Court makes the following observations. As set forth above, an allonge to the Note signed by an authorized representative of RCS indicates that it was transferred to Windward Bora, but, as discussed, that allonge includes no date indicating when the transfer occurred. (Note, Pl. Ex. 1.) At trial, Devico initially testified that the Note was transferred in 2017 or 2018, which would have been after Devico formed Windward Bora but before Windward Bora filed this lawsuit. (*See* Trial Tr. at 30:17–23; Pl. Ex. 7 (including Windward Bora's formation date).) However, as set forth above, the evidence showed that Devico has made other, conflicting previous statements under oath concerning when Windward Bora took possession of the Note. (*See* Trial Tr. at 92:18–94:23 (illustrating that, at different times, Devico has claimed under oath that Windward Bora received the Note in 2015 and 2019).) Notably, as set forth above, Devico refused to answer whether he had ever stated under oath that Windward Bora received the Note in 2015, claiming he did not remember whether he had signed an affidavit to that effect, even after being confronted with the affidavit to refresh his recollection. (*Id.* at 92:18–93:12.) Devico's lack of candor and precision regarding something as significant as when his company took possession of the Note underlying the foreclosure in this case evidenced a concerning lack of forthrightness.

His evasive demeanor and inconsistencies also suggested a willingness on Devico's part to testify to facts that favored his case and a strategic refusal to testify about information that was adverse to his position.

On the question of when Windward Bora received the Note, Defendant contends that "Exhibit F and Exhibit G establish that RCS Recovery Services, LLC sold this loan to Crosby Capital LLC and Crosby Capital LLC then sold it to Windward Bora, LLC in September 2019." (Def.'s Opp'n, ECF No. 128, at 16 (emphasis omitted).) Exhibits F and G are redacted, however, and the Court ultimately does not need to reach the question of whether the loan number 146847 referred to in Exhibit F relates to the Note and Mortgage at issue in this case. (*See* Def. Exs. F & G; Pl. Ex 3.) Accordingly, the Court declines Defendant's invitation to conclude that Exhibits F and G conclusively establish the date of the transfer of the Note and Mortgage in this case but notes that the last four digits (6847) appear in the servicing tape received from RCS, and the loan number 146847 appeared unredacted on the original Note that was inspected on December 10, 2024. (*See* Pl. Ex. 3; Dec. 10, 2024 Conf. Tr., ECF No. 130, at 7:11–13 (noting that the last two pages of the Note had the underacted loan number)[12].) The Court also notes that Defendant's theory is further corroborated by Devico's verified responses to the interrogatories in this case, which state that Plaintiff came into possession of the Note on September 20, 2019, one day after the date RCS entered into the mortgage note purchase and sale agreement with Crosby Capital. (*See* Def. Ex. B at 4; Def. Ex. F.) Based on the totality of the record and in light of the unexplained inconsistencies between Devico's statements before and at trial, the Court does not credit Devico's testimony

---

[12] The Court's independent inspection of the Note confirmed that the loan number included on the last two alonges to the original Note, which included the allonge transferring the Note to FTS Capital, referred to loan number 146847.

that Windward Bora took possession of the Note in 2017 and finds that the timing of the transfer of the Note has not been conclusively established. Ultimately, however, this is immaterial because the Court does find, based on all the available evidence, including the fact that the allonge was included as an exhibit to the complaint, that Windward Bora was in possession of the Note no later than December 30, 2019, when this case commenced.

At the same time, based on the factual findings set forth above, Plaintiff has failed to adduce competent, credible evidence concerning the outstanding balance on the mortgage loan on any date after February 20, 2012, including as of the date of the effective statute of limitations (January 1, 2014). As set forth above, the evidence offered at trial established that the last payment on the loan was made on October 9, 2008. (Trial Tr. at 51:15–25; Verdooren Dep., Pl. Ex. 6, at 40:23–41:4; Pl. Ex. 5 at PHH 0017.) Verdooren testified that upon release on February 20, 2012, the balance due on the loan was $108,801.24. (Verdooren Dep., Pl. Ex. 6, at 45:4–14.) PHH's records, which include the account notes and recorded payment history from May 2007 to July 2013 by a prior servicer, corroborate that release date and the amount due on that date. (Pl. Ex. 5.) As set forth above, Verdooren could not and did not testify as to the loan balance after February 20, 2012. (Verdooren Dep., Pl. Ex. 6, at 55:17–57:3.)[13]

Due to the significant gap in the loan servicing records and the lack of foundation for the servicing tape received from the prior servicer, Plaintiff ultimately failed to establish the balance of the loan for any date after February 20, 2012. (*See* PHH

---

[13] In rulings after bench trials in which deposition testimony substitutes for in-person testimony, the Court may rule on objections raised during the deposition in the final assessment of the merits of the case. 8A Wright & Miller's Federal Practice & Procedure § 2151 (3d ed. 2024). At Verdooren's deposition, his counsel made an objection within this line of questioning. (Verdooren Dep., Pl. Ex. 6, at 56:2–3.) The objection is overruled.

Records, Pl. Ex. 5, at PHH 0017; *see* Trial Evidence discussion, *supra*.) No other evidence admitted at trial established whether any debt was owed on the Mortgage when Plaintiff obtained the Note.

## CONCLUSIONS OF LAW

Under New York Law, to establish its entitlement to a foreclosure, "[t]he underlying facts the lender must prove are the existence of an obligation secured by a mortgage, and a default on that obligation." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997) (quotation marks omitted); *see also MTGLQ Invs., L.P. v. Rashid*, 184 N.Y.S.3d 372, 373 (App. Div. 2d Dep't 2023) (observing that to "establish prima facie entitlement to judgment as a matter of law in a foreclosure action, a plaintiff must produce the mortgage, the unpaid note, and evidence of the default"); *Windward Bora LLC v. Baez*, No. 19-CV-5698 (PKC) (SMG), 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020) ("Under New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment on the loan secured by the mortgage." (quotation marks omitted)); *E. Sav. Bank, FSB v. Ferro*, No. 13-CV-5882 (SJF) (GRB), 2015 WL 778345, at *5–6 (E.D.N.Y. Feb. 24, 2015). To establish evidence of default, "no general allegations of default will be assumed to be true." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 79 (E.D.N.Y. 2019) (quotation marks and alteration omitted). It is the plaintiff's burden to demonstrate default through admissible evidence. *See id.*; *see also MTGLQ Invs., L.P.*, 184 N.Y.S.3d at 373.

As discussed above, there is no dispute as to the existence of the Note or the Mortgage, and both were entered into evidence at trial. (*See* Trial Tr. at 16:18–19:3, 20:7–14.) There are, however, disputes about both ownership of the Note and Mortgage and whether Plaintiff has established an actionable default on the Mortgage. For the reasons

discussed below, the Court holds that Plaintiff failed to establish an actionable default on the Mortgage at trial and is therefore not entitled to foreclose on the Property based on the trial record.

## I. Existence of Obligation & Ownership of the Note and Mortgage

As discussed above, the evidence demonstrating when the Note was transferred to Windward Bora is unclear. The evidence adduced at trial does, however, indicate that Windward Bora took possession of the Note in advance of the filing of this lawsuit. The Court thus finds that Plaintiff has shown the existence of an obligation on the Mortgage, as well as the ownership of the Note and Mortgage through its predecessor in interest, sufficient to establish the first two elements of a foreclosure case. In addition, Windward Bora has shown standing to commence this foreclosure action. *Bank of New York Mellon v. Gordon*, 97 N.Y.S.3d 286, 292 (App. Div. 2d Dep't 2019) ("A plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that it is either the holder or assignee of the underlying note at the time the action is commenced." (quotation marks omitted)).

## II. Default

To establish default on a mortgage, "New York courts have ruled that general allegations are insufficient; instead '[t]here must be some proof in the form of an affidavit of a person with knowledge, or a complaint verified by a person with knowledge.'" *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 415 (E.D.N.Y. 2018) (quoting *Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367, 371 (S.D.N.Y. 2007)); *see also Plenitude Cap. LLC v. Utica Ventures, LLC*, No. 18-CV-2702 (MKB) (RER), 2019 WL 4014840, at *4 n.6 (E.D.N.Y. June 11, 2019), *report and recommendation adopted*, 2019 WL 3543610 (E.D.N.Y. Aug. 5, 2019).

Plaintiff argues that the evidence admitted at trial establishes both default and the amount owed on the loan. (*See generally* Pl.'s Findings, ECF No. 124.) First, Plaintiff argues that Verdooren's deposition testimony establishes that "the last payment received on the loan was October 9, 2008." (Pl.'s Findings, ECF No. 124, at ECF p. 4.) Plaintiff also argues that Devico's testimony about a "servicing tape he received from his predecessor reflecting the amounts owed on the loan" is sufficient to show a default occurred. (*Id.*) Defendant contends that none of this evidence establishes the balance of the loan as of the date alleged in the complaint. (*See, e.g.*, Def.'s Findings, ECF No. 125, at 5; *see generally* Def.'s Opp'n, ECF No. 129.) Defendant also contends that Plaintiff did not adduce any admissible evidence establishing a default on the loan at a time relevant to this lawsuit — namely, between January 1, 2014, and December 30, 2019. (Def.'s Findings, ECF No. 125, at 5.)

As demonstrated above, the exhibits and testimony at trial did not establish, by a preponderance of the evidence, that the loan remained in default past February 20, 2012. To be sure, Verdooren's testimony and the PHH records indicate that there was a significant balance remaining on the loan when GMAC service released it. (Trial Tr. at 53:2–12 (noting that the PHH records indicate that on February 20, 2012, $108,801.24 was due on the Note).) But what happened next? As noted above, the allonges to the Note indicate that it was held by different entities at different times, with no precision as to when each entity received the Note. Given the significant gap in the records and the fact that this loan changed hands several times, there is insufficient evidence to find that Plaintiff has established, with admissible evidence and by a preponderance, the status of the loan when the Note was transferred to Windward Bora.

As recognized in *Gustavia Home, LLC v. Bent*, under New York law, "general allegations" are generally insufficient to establish default. 321 F. Supp. 3d at 415. In

*Deutsche Bank National Trust Co. v. Saavedra*, 214 N.Y.S.3d 94 (App. Div. 2d Dep't 2024), the Second Department recently had occasion to evaluate the sufficiency and type of evidence needed to establish default on a mortgage under New York law. In *Saavedra*, the plaintiff "submitted an affidavit of an employee of its loan servicer, who averred that he reviewed certain business records maintained by the loan servicer and that the defendant defaulted in making a payment on the mortgage debt on October 1, 2013, and continuing thereafter." *Id.* at 96–97. However, because the plaintiff in *Saavedra* did not submit any actual "business record substantiating the alleged default on October 1, 2013, and instead submitted a loan payment history reflecting account transactions occurring on or after October 4, 2013," the court affirmed the lower court's ruling that the plaintiff had failed to establish its *prima facie* case for default. *Id.* at 97. In so holding, the Second Department observed that the "affiant's assertion regarding the defendant's alleged default on October 1, 2013, without a supporting business record upon which he could rely in making that assertion constitutes inadmissible hearsay." *Id.*[14] Additionally, as the Honorable Sanket J. Bulsara has observed, "the absence of documentation cannot be the basis to conclude that other payments were not made or that payments ceased on a certain date." *Toiny LLC v. Lindsay*, 368 F. Supp. 3d 453, 458 (E.D.N.Y. Mar. 21, 2019). Yet that is precisely what we have here.

---

[14] Although not directly relevant to the precise issue here, the Court finds persuasive authority in cases that address the type of proof required to ascertain damages in the context of a default judgment in a foreclosure action, where courts often require "'more than production of the initial mortgage and an affidavit stating the outstanding principal on a loan.'" *Windward Bora LLC v. Valencia*, No. 19-CV-4147 (NGG) (RER), 2022 WL 872506, at *6 (E.D.N.Y. Mar. 24, 2022) (quoting *Happy Homes, LLC, v. Jenerette-Snead*, No. 15-CV-1788 (MKB) (RML), 2016 WL 6599826, at *4 (E.D.N.Y. Nov. 7, 2016)); *see also Nationstar Mortg. LLC v. Atanas*, 285 F. Supp. 3d 618, 627 (W.D.N.Y. 2018) (collecting cases); *Happy Homes*, 2016 WL 6599826, at *5 (collecting cases and discussing that, without supporting documentation, there are unanswered questions concerning the basis for and accuracy of alleged damages). Similar to these cases, the lack of evidence presented here causes the Court to find that Plaintiff has not presented sufficient supporting documentation to establish its entitlement to the relief requested.

As set forth above, Plaintiff did not establish any granular facts about what happened with the Note and Mortgage between the time of the service release from GMAC in February 2012 and when Windward Bora took possession of the Note, on an uncertain date. Moreover, Plaintiff did not offer any admissible business records to establish whether the loan was in default at any point after February 2012. Indeed, as discussed above, Verdooren could not testify as to whether there was a default as of January 1, 2014, and confirmed that the PHH records do not cover that timeframe. (Verdooren Dep., Pl. Ex. 6, at 55:17–56:10; *see also* PHH Records, Pl. Ex. 5.) Although the Court credits Devico's belief that the loan was in default when he decided to commence these proceedings, the trial evidence failed to establish Plaintiff's case. Due to his lack of personal knowledge regarding the underlying records and payment history, Devico could not, and did not, establish default through his testimony. In addition, his effort to rely on the servicing tape was misplaced. As illustrated at trial, Plaintiff could not establish key prerequisites for admission of the servicing tape for its truth since the sole witness who testified about the document could not establish how the document came into existence, who created it, or whether it was created by or from information transmitted by someone with knowledge. *See* Fed. R. Evid. 803(6). Devico's assumption, based on his reliance on a document of unknown provenance, created by unknown individuals at an unspecified time, is simply insufficient for the Court to conclude that Plaintiff has proven default by a preponderance of the evidence. *See Gustavia Home, LLC*, 321 F. Supp. 3d at 415.

For the foregoing reasons, the Court finds that Plaintiff has failed to meet its burden to establish, through admissible evidence, that the alleged, relevant default occurred. Accordingly, Plaintiff failed to meet its burden at trial.

**CONCLUSION**

For the foregoing reasons, Plaintiff has failed to establish, by credible and competent evidence, the alleged default on the Mortgage underlying this foreclosure action. The Court therefore concludes that Plaintiff's claim was not proven at trial. The Clerk of Court is respectfully directed to enter judgment for Defendant and to close this case.

**SO ORDERED.**

Dated:  Brooklyn, New York
      June 6, 2025

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE